RECEIVED

FEB 0 3 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

ORIGINAL

MICHAEL R. LEVINE, Oregon State Bar No. 93142 (admitted *pro hac vice*)
MATTHEW G. MCHENRY, Oregon State Bar No. 04357
Attorneys At Law
400 SW Sixth Avenue, Suite 600
Portland, Oregon 97204
Phone:   (503) 546-3927
Fax:      (503) 224-3203
Email:   MichaelLevineESQ@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>WILLIAM PIERS,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE A00-0104 CR (HRH)<br><br>REPLY TO GOVERNMENT'S POST-<br>EVIDENTIARY HEARING WRITTEN<br>SUMMATION IN OPPOSITION TO<br>DEFENDANT'S MOTION FOR RELIEF<br>PURSUANT TO 28 U.S.C. § 2255 |

The defendant, William Piers, through his attorneys, Michael R. Levine and Matthew G.

McHenry, submits the following Reply to the Government's Written Summation in Support of

Its Opposition To The Defendant's Motion For Relief Pursuant to 28 U.S.C. § 2255.  The

argument is based on and incorporates the complete record of the case, including all of Mr.

Piers's previously filed pleadings as well as the transcripts from the trial and various hearings.[1]

---

[1] For purposes of this pleading, citations to the transcript of the February 2001 trial are denoted as "Trial."  Citations to the transcript of the January 2001 ex parte hearing on the Motion to Withdraw are denoted as "Ex Parte."  Citations to the transcript of the August 2005 evidentiary hearing are denoted as "Evid. Hrg."  Citations to Mr. Piers's Motion to Vacate Convictions and Sentences Pursuant to 28 U.S.C. § 2255 are denoted as "2255 Motion."  Citations to Mr. Piers's Reply to Government's Opposition to the 2255 Motion (Docket No. 216) are denoted as "Reply."  Citations to Mr. Piers's Post-Evidentiary Hearing Argument in Support of the 2255 Motion (Docket No. 247) are denoted as "Post Hrg. Arg."  Citations to the Government's Written Summation in Support of Its Opposition to the 2255 Motion (Docket No. 251) are denoted as "Gov't Response."

## ARGUMENT

On January 17, 2006, the government filed a Written Summation in response to Mr.

Piers's Post-Evidentiary Hearing Argument in Support of Defendant's Motion for Relief

Pursuant to 28 U.S.C. § 2255 (Government Response). The Government Response fails to even

address the majority of Mr. Piers's arguments. In the few situations where the government has

responded to specific arguments regarding the performance of Mr. Piers's trial attorney Rex

Butler, it cites no case law whatsoever in support of its positions. Moreover, the government

consistently ignores undisputed facts, established by the record in this case, that are not favorable

to its position. As just one of several examples, the government takes Mr. Piers to task because

his mother, Mary Hutchison, who paid Mr. Butler's retainer, testified that she had fired Mr.

Butler; the government argues that such a decision was not hers to make. Gov't Response at 4.

However, this argument simply ignores the fact that *Mr. Butler himself* testified that Mr. Piers

had fired him "several times" "well before trial." Evid. Hrg. 18–19. Further, the government

has failed to rebut any of the arguments from Mr. Piers's Post-Evidentiary Hearing Argument,

and has likewise failed to distinguish any of the controlling case law that clearly supports Mr.

Piers's motion for relief.

## I.    The Government Has Failed To Address The Majority Of Mr. Piers's Claims Of Ineffective Assistance Of Trial Counsel.

The government has not addressed in any way the following claims of ineffective

assistance of counsel from Mr. Piers's Post-Evidentiary Hearing Argument. Rather than restate

the extensive arguments, Mr. Piers refers the Court to his previously-filed pleadings, where each

claim is presented and argued in detail:

- Ground 1.1:  Failure to make a timely Motion to Withdraw and substitute new counsel to represent Mr. Piers at trial.  *See* 2255 Motion at 4; Reply at 7–8; Post Hrg. Arg. at 1–6.
- Ground 1.8:  Failure to give an opening statement.  *See* 2255 Motion at 11–12; Reply at 18–19; Post Hrg. Arg. at 26–29.
- Ground 1.9:  Failure to object to introduction of irrelevant and prejudicial evidence of imitation CIA documents.  *See* 2255 Motion at 12; Reply at 20–21; Post Hrg. Arg. at 29–32.
- Ground 1.10:  Failure to object to the testimony of FBI computer forensics expert Steven Payne that 28 compact discs of data had been taken from Mr. Piers's computer.  *See* 2255 Motion at 12–13; Reply at 20–21; Post Hrg. Arg. at 29–32.
- Ground 1.11:  Failure to object to irrelevant and unfairly prejudicial evidence as to the reaction of the public to the crime.  *See* 2255 Motion at 13–14; Reply at 20–21; Post Hrg. Arg. at 29–32.
- Ground 1.12:  Failure to object to the government's use of a mannequin to display items of evidence not found together.  *See* 2255 Motion at 14; Reply at 20–21; Post Hrg. Arg. at 29–32.
- Ground 1.13:  Incompetent cross-examination of Anchorage Police Officer Dan Reeder, undermining an otherwise strong defense as to the machine gun counts.  *See* 2255 Motion at 14–15; Reply at 22–24; Post Hrg. Arg. at 32–37.
- Ground 1.14:  Failure to cross-examine government witness and forensic expert Robert Shem on whether the Norinco assault rifle, as fired, was an automatic or a semi-automatic.  *See* 2255 Motion at 15–16; Reply at 22–24; Post Hrg. Arg. at 37–38.
- Ground 1.15:  Failure to call a single character witness to testify on Mr. Piers's behalf.  *See* 2255 Motion at 16; Reply at 25–26; Post Hrg. Arg. at 38–40.
- Ground 1.16:  Denying Mr. Piers his constitutional right to testify in his defense.  *See* 2255 Motion at 16; Reply at 26–27; Post Hrg. Arg. at 40–41.
- Ground 1.18:  Failure to develop a coherent defense theory.  *See* 2255 Motion at 17–18; Reply at 28–30; Post Hrg. Arg. at 42–52.
- Ground 1.19:  Failure to request a jury instruction that before the jury could convict Mr. Piers of the machine gun count, it had to find beyond a reasonable doubt that Mr. Piers knew the modified weapon operated as an automatic.  *See* 2255 Motion at 18; Reply at 30–31; Post Hrg. Arg. at 52.
- Ground 1.21:  Concession of Mr. Piers's guilt on two conspiracy counts during closing arguments.  *See* 2255 Motion at 19–20; Reply at 31–39; Post Hrg. Arg. at 53–55.
- Ground 1.22:  Failure to move for acquittal under Federal Rule of Criminal Procedure 29 on the grounds of insufficient evidence that Mr. Piers fired the Norinco assault rifle.  *See* 2255 Motion at 20; Reply at 39–41; Post Hrg. Arg. at 55–56.

Mr. Piers submits that the government's failure to respond in any way to the arguments made on the above claims in Mr. Piers's Post-Evidentiary Hearing Argument is because the government cannot effectively rebut those arguments.  The government's deliberate decision to stand mute in the face of these arguments exposes the weakness of the government's position.

II.     **The Government Has Failed To Rebut Any Of Mr. Piers's Arguments Regarding His Claims Of Ineffective Assistance Of Counsel.**

Below Mr. Piers addresses the few, albeit unpersuasive, arguments that the government made in its Response.

A.     **Mr. Piers Was Not Required To Testify At His Evidentiary Hearing, And Did Not Deprive The Government Of An Opportunity To Cross-Examine Him.**

The government claims that by not testifying at the August 2005 evidentiary hearing on his 2255 Motion, Mr. Piers has somehow "deprived" the government of the opportunity to examine him. Gov't Response at 3. The government then makes an extraordinary and entirely unsupported allegation that because Mr. Piers did not testify, there is no evidence to support his claims. *Id.* This flawed argument is belied by the facts.

First, Mr. Piers is not aware of any law requiring him to testify at an evidentiary hearing on a 2255 motion, nor does the government point to one. Second, and more importantly, the government was entitled to call Mr. Piers as a witness at any time during the evidentiary hearing, and chose not to do so. *See United States v. Hayman*, 342 U.S. 205, 222 (1952) (noting that unlike a criminal trial, a "proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction"); Rule 12 of Rules Governing Section 2255 Proceedings (noting that the "Federal Rules of Civil Procedure . . . may be applied to a proceeding under these rules").

An analogous situation occasionally arises in a criminal trial proceeding, where the government does not call every witness on its witness list. If the defense desires the testimony of an uncalled government witness, the defense must call that witness independently. If it fails to do so, it cannot complain that the government did not:

4

> [T]he government . . . does not have the burden of calling every witness whose testimony would support a verdict of guilty, and it need not call a witness, equally available to both sides, merely because cross-examination of such a witness might prove helpful to the defense case.

*United States v. Snow*, 521 F.2d 730, 736 (9th Cir. 1975). *See also United States v. Weiner*, 578 F.2d 757, 772 (9th Cir. 1978) (same).

Mr. Piers was physically present at the evidentiary hearing, and was equally available to both parties as a witness. Just as the government is not required to call witnesses equally available to both sides merely because cross-examination of the witness might help the defense, Mr. Piers was not required to testify on his own behalf merely because, as the government contends, cross-examination of Mr. Piers might have assisted the government's case. *Snow*, 521 F.2d at 736. The government chose to rest its case without calling Mr. Piers, and now complains that this is somehow Mr. Piers's fault. The Court should not sanction this fallacious stance. In short, the government's Response does not explain how Mr. Piers "deprived" it of an opportunity that the government itself failed to take advantage of.

Moreover, the testimony of other witnesses at the evidentiary hearing provided Mr. Piers with the evidence needed to support his various claims of ineffective assistance. *See* Post Hrg. Arg. at 1 *passim* (where testimony from various witnesses, especially Rex Butler, at the August 2005 Evidentiary Hearing is used to support every claim and argument made). After the testimony of the various witnesses at the August 2005 evidentiary hearing, particularly that of Mr. Butler, there was no need for Mr. Piers to testify. Any contrary assertion by the government can only be sustained by ignoring the testimony of Mr. Butler and the other witnesses at the hearing—which the government has done throughout its Response.

**B. The United States Supreme Court Has Not Ruled On The Retroactivity Of *United States v. Booker*.**

In the single instance in the Government Response that actually cites case law, the government correctly notes that the Ninth Circuit has found that *United States v. Booker*, 543 U.S. 220 (2005), is not retroactive. *United States v. Cruz*, 423 F.3d 1119, 1120 (9th Cir. 2005). Gov't Response at 2. However, the United States Supreme Court has not ruled on the question of *Booker*'s retroactivity. Based on the argument Mr. Piers set forth in his previously filed Reply at 50–60, Mr. Piers asserts that *Booker* should be retroactive, and is confident that when the United States Supreme Court passes on the issue, the Court will so hold.

**C. There Is A Large Amount Of Evidence Of An Extensive Conflict Between Mr. Piers And Mr. Butler At The Time Of Trial.**

The government states that Mr. Piers has "presented no evidence establishing any sort of legally significant conflict" between Mr. Piers and Mr. Butler. Gov't Response 3–4. This statement is another example of the government blinding itself to any facts that do not support its position. The record throughout the case is rife with evidence that there was an extensive conflict between Mr. Butler and Mr. Piers. Mr. Butler *himself* testified at the evidentiary hearing that Mr. Piers had fired him "several times" "well before trial." Evid. Hrg. 18–19. Mr. Butler likewise testified that he knew that his relationship with Mr. Piers was "in trouble." *Id.* at 17. Mr. Butler did not disagree that he was not even speaking with Mr. Piers at all at the time of trial, instead testifying that it "might well be" true. *Id.* at 24. As further evidence of a significant conflict, Mary Hutchison, Mr. Piers's mother and the individual who paid Mr. Butler's retainer, testified at the evidentiary hearing that that she also fired Mr. Butler several times, both orally and in writing, and expressed her dissatisfaction with him "many, many times." *Id.* at 238.

6

Moreover, the undisputed evidence from the entire record of the case shows the existence of an extensive conflict. In a letter Mr. Piers wrote the Court the day before his trial—a letter this Court sealed and made part of the record—Mr. Piers stated he did "not recognize" his "forced" counsel, Mr. Butler, and also stated evidence that "should have been collected and acted upon" was lost. Exhibit B (filed with Mr. Piers's 2255 Motion).

At the hearing on the Motion to Withdraw, Mr. Piers told the Court that Mr. Butler had not acted upon any of the information Mr. Piers had given him. Ex Parte 2–3. Mr. Piers further stated that he believed Mr. Butler did not have Mr. Piers's "best interest at heart." *Id.* at 3. Mr. Piers informed the Court that he felt he had to solicit advice from other attorneys, because Mr. Butler had "never responded" to any of Mr. Piers's questions, had not provided "any legal counsel" and had not "been doing anything." *Id.* at 4. Mr. Piers told the Court he had given Mr. Butler "more than one name," and had provided "a lot of information and a lot of specific things" that he wanted investigated, and that "nothing's been done." *Id.* at 9–10. Mr. Piers also accused Mr. Butler of misrepresenting things to the Court, referring to things Mr. Butler said as "simply not true" (*id.* at 6), and at one point saying "That's a lie." *Id.* at 7.

Mr. Butler's statements at the hearing on the motion to withdraw were no less suggestive of a significant conflict than Mr. Piers's. Mr. Butler told that Court that Mr. Piers refused to see him when Mr. Butler had attempted to visit him prior to the trial. *Id.* at 3, 5. Mr. Butler noted that Ms. Hutchison and the rest of the family had "complained" about Mr. Butler's actions, or lack thereof. *Id.* at 6. Mr. Butler also told the Court Mr. Piers had sent him on a "wild goose chase," that he "wonder[ed] . . . quite frankly, whether this is a figment of Mr. Piers's imagination or is the truth of the matter," and that he had "lost some faith in being able to rely on information" provided to him by Mr. Piers. *Id.* at 6–8. In short, both client and attorney were on

7

record calling each other liars. In light of the above, the government's assertion that there is "no evidence" of a conflict between Mr. Piers and Mr. Butler flatly contradicts the record.

The government's patent misconstruction of the evidence of a conflict is merely an attempt to cloud the real issues at hand—not the least of which is that Mr. Butler, by his own admissions at the evidentiary hearing, simply refused to withdraw from the case despite being fired by Mr. Piers "several times" "well before trial." Evid. Hrg. at 18–19. As argued in detail in Mr. Piers's previous filings, Mr. Butler's conduct was inexcusable and indefensible, and constituted ineffective assistance under *Strickland*. *See* Post Hrg. Arg. at 1–6 (regarding Mr. Butler's refusal to withdraw and the untimeliness of the Motion to Withdraw); *id.* at 57 (regarding Mr. Butler's refusal to withdraw as part of the cumulative error claim).

The government states it is "ironic[]" that Mr. Piers argues that other counsel should have represented him during the Motion to Withdraw. The government's rhetoric notwithstanding, the Ninth Circuit has held without reservation that having a different attorney represent Mr. Piers at the hearing on the Motion to Withdraw is precisely what should have occurred. *United States v. Wadsworth*, 830 F.2d 1500, 1510–11 (finding a due process violation and holding that the court should have suspended the motions hearing and appointed new counsel to represent the defendant "as soon as it became apparent that [the attorney] had taken an adversary and antagonistic position" against his client). Once again, however, the government simply ignores facts and law that do not support its arguments.

### D. The Untimeliness Of The Motion To Withdraw Was A Critical Factor In The Ninth Circuit's Affirmation Of The Denial Of The Motion; It Was Not The Sole Factor.

According to the government, Mr. Piers argues that the Ninth Circuit "only affirmed the court's original decision [to deny the motion to withdraw] because the motion . . . was filed six days before the trial was set to commence." Gov't Response at 5. However, this misstates Mr.

Piers's position. Nowhere in any of Mr. Piers's previous pleadings has he suggested that the untimeliness of the Motion to Withdraw was the sole reason the Ninth Circuit affirmed the District Court. Rather, Mr. Piers has stated that the timing of the Motion was a "critical factor," (Post Hrg. Arg. at 5), which is undeniable—the timeliness of a motion to withdraw is one of three factors appellate courts must consider in reviewing a denial of a motion to substitute counsel. *United States v. Franklin*, 321 F.3d 1231, 1238 (9th Cir. 2003). The government's exaggeration and misconstruction of Mr. Piers's argument is another attempt to deflect attention away from Mr. Piers's strong claims.

### E. The Government's Own Witnesses Established That Adam, The Uncharged Member Of The Conspiracy, Existed.

At the core of Mr. Piers's claim that Mr. Butler did no investigation in this case is Mr. Piers's assertion that an uncharged member of the conspiracy named Adam was involved, and his role in the crime should have been thoroughly explored. The Government Response states that Mr. Piers has done nothing more than establish that Adam does not exist. Gov't Response at 5–6. An examination of the testimony in this case reveals the fallacy of this statement.

Indeed, the government's own witnesses testified at trial that Adam existed. Raymond Hubbard, Mr. Piers's co-defendant and the government's chief witness at Mr. Piers's trial, referenced Adam multiple times after his arrest, during his Grand Jury testimony, and during his testimony at Mr. Piers's trial. *See Statement of Raymond Hubbard*, 8–9 (Evidentiary Hearing Exhibit A); Exhibit D, October 18, 2000 Grand Jury Testimony of Raymond Hubbard, at 11–13, 16–17 (filed with Mr. Piers's Reply); Trial at 2-5, 2-19 to 20 (testimony of Raymond Hubbard); Trial at 4-99 to 100 (testimony of Lou Ann Henderson). More telling, however, is that the government's lead agent in the case, former FBI agent Lou Ann Henderson, testified both at trial and at the evidentiary hearing that the government was seeking an individual named Adam for

his involvement in the robbery. Trial at 4-99 to 100, 4-137 to 140; Evid. Hrg. at 222–23 (testimony of Lou Ann Henderson). In fact, it was Ms. Henderson's testimony that exposed how little Mr. Butler did in Mr. Piers's case—she testified that the government knew Adam's physical description, that he had red hair, that he had a girlfriend named Alison, that he liked to skateboard, and that he lived off of Tudor Road. Trial 4-99 to 100; Evid. Hrg. at 222–23 (testimony of Lou Ann Henderson). Mr. Butler admitted that the government had given him this information. Evid. Hrg. at 33–37. This is more than enough information for any competent investigator to start an investigation, yet Mr. Butler inexplicably did not bother to hire an investigator (despite having received funds from Mr. Piers's family to do so).

By stating that Mr. Piers has established that Adam did not exist, the government is likewise contradicting the statements of its own witnesses and, moreover, challenging the veracity of its own agent, Ms. Henderson. This is untenable, and serves once again as an example of the government conveniently ignoring unfavorable facts and law.

**F. Mr. Butler's Reliance On The Government's Investigation Was Unreasonable And Fell Below The Standard Of Competent Representation; Mr. Butler Should Have Conducted His Own Independent Investigation.**

The government states that Mr. Butler's decision to not investigate Adam did not fall outside the scope of competent representation. Gov't Response at 6. This argument is only sustainable if one ignores the significant amount of information about Adam that the government's own witnesses and agents testified to. *See supra* Part II.E; Post Hrg. Arg. at 11–12. Further, Mr. Butler's failure to investigate Adam was but one example of far more egregious conduct—Mr. Butler's failure to investigate *at all*, despite receiving additional funds from Mr. Piers specifically earmarked for investigation, and despite never returning those funds to Mr.

Piers or his family. The government has not addressed Mr. Butler's overall failure to investigate, instead focusing only on his failure to investigate Adam.

The government's stance that Mr. Butler's failure to investigate is acceptable conduct for a competent attorney is in direct contradiction to the ABA Standards for Criminal Justice for defense attorneys. According to Standard 4-4.1, a defense attorney has a "Duty to Investigate." ABA STANDARDS FOR CRIMINAL JUSTICE, DEFENSE FUNCTION, Standard 4-4.1 (1993). To meet that standard, a defense attorney must "conduct a prompt investigation of the circumstances of the case and explore *all* avenues leading to facts relevant to the merits of the case." *Id.*, Standard 4-4.1(a) (emphasis added). The commentary to the ABA Standards for the Defense Function speaks to the instant case. It first notes that "[c]onsiderable ingenuity may be required to locate persons who . . . have information concerning [the crime]." *Id.*, Standard 4-4.1, Commentary. In contrast, Mr. Butler did not even need to exercise "considerable ingenuity" to investigate Adam; rather, he simply needed to hire an investigator and provide the investigator with the information he had about Adam—physical description, red hair, a girlfriend named Alison, likes to skateboard, lives off of Tudor Road, socializes with the same individuals as Raymond Hubbard and William Piers. Mr. Butler even had the funds in his possession to do so, yet did not.

The commentary continues, "[i]t may be necessary to approach a witness several times to raise new questions . . . ." *Id.* Mr. Butler, in contrast, did not recall even *attempting* to contact either of the victim tellers in the case (though he agreed this would have been a "good thing to do"), nor did he recall attempting to interview either of Mr. Piers's co-defendants. Evid. Hrg. at 54–56. This cannot be considered a strategic decision. *See Alcala v. Woodford*, 334 F.3d 862, 889 (9th Cir. 2003) ("[T]he decision not to call a witness is entitled to less deference if the attorney has not interviewed the witness."); *Henderson v. Sargent*, 926 F.2d 706, 711 (8th Cir.

1991) (Noting that declining to interview a witness is not a strategic decision, but rather is "a decision related to adequate preparation for trial," and holding that "no reasonable professional judgment [] would support trial counsel's failure to investigate" a witness); *Eldridge v. Atkins*, 665 F.2d 228, 232–36 (8th Cir. 1981) (finding ineffective assistance for failing to even attempt to speak to co-defendants and other witnesses). The commentary also notes that scientific resources "may be required to evaluate certain kinds of evidence." ABA STANDARDS FOR CRIMINAL JUSTICE, DEFENSE FUNCTION, Standard 4-4.1, Commentary (1993). Mr. Butler, however, did not perform any analyses, scientific or otherwise, on any of the circumstantial evidence. *E.g.*, Evid. Hrg. at 49–54 (Mr. Butler did not pursue a bootprint analysis, seek security camera footage which would have shown Mr. Piers was in Walmart at the time the robbery occurred, nor consider utilizing a voice examplar).

This paragraph of the commentary concludes by stating, "Neglect of *any* of these steps may preclude the presentation of an effective defense." ABA STANDARDS FOR CRIMINAL JUSTICE, DEFENSE FUNCTION, Standard 4-4.1, Commentary (1993) (emphasis added). Mr. Butler neglected *all* of these steps, and more. In fact, Mr. Butler could not recall a single act of investigation he undertook in this case. Evid. Hrg. 53 et seq. Likewise, there was "nothing at all" in Mr. Butler's file—no "notes or reports"—pertaining to any sort of investigation conducted by the defense team. Evid. Hrg. 235 (Testimony of Matthew McHenry, Mr. Piers's co-counsel).

Mr. Butler explained that, at least as far as Adam was concerned, he chose to rely on the government's investigation rather than conduct his own. Evid. Hrg. 140–41 (stating he "assumed" the government was looking for Adam). This also is a direct affront to the ABA Standards for Criminal Justice, which states that though defense counsel should encourage the prosecutor to disclose facts, "defense counsel must then proceed to verify them." ABA

STANDARDS FOR CRIMINAL JUSTICE, DEFENSE FUNCTION, Standard 4-4.1, Commentary (1993).

Moreover, the Ninth Circuit has explicitly condemned the argument that it is reasonable for

defense attorney to rely on the investigation of the government, due to the obviously conflicting

interests. *Alcala*, 334 F.3d at 891–92. The *Alcala* Court compared a defense attorney's reliance

on the government's investigation to the case of *Rios v. Rocha*, 299 F.3d 796, 808 (9th Cir.

2002), where the Ninth Circuit rejected the argument that a defense counsel could reasonably

rely on a co-defendant's investigation:

> In *Rios*, we considered the government's argument that defense counsel's failure
> to investigate was not deficient because he reasonably relied upon the
> investigation conducted for a co-defendant. In rejecting this argument, we held
> that "it would have been unreasonable for him to rely solely on the investigation
> performed for a co-defendant, because the co-defendant's interests in the case
> might well conflict with [the defendant's]." There is no question that the
> *prosecution's* interests in this case conflicted with Alcala's, and so *trial counsel's
> reliance on the prosecution's investigation is no more reasonable than the
> reliance on a co-defendant's investigation* in *Rios*.

*Alcala*, 334 F.3d at 891–92 (first emphasis in original, second emphasis added).

Mr. Butler did no investigation whatsoever in Mr. Piers's case, despite his clear duty to

do so under both the law and the ABA standards. The Commentary to the ABA Standards for

Criminal Justice note that "[f]ailure to make adequate pretrial investigation and preparation may

also be grounds for finding ineffective assistance of counsel." ABA STANDARDS FOR CRIMINAL

JUSTICE, DEFENSE FUNCTION, Standard 4-4.1, Commentary (1993). That is precisely what

happened in the instant case. Rather than reiterate them here, Mr. Piers refers the Court to the

arguments regarding ineffective assistance for failing to investigate made in his previous

filings—arguments that remain unrebutted by the government. 2255 Motion at 7–9; Reply at

10–12; Post Hrg. Arg. at 9–16. Mr. Butler's failure to investigate constituted ineffective

assistance.

## G. Both Of Mr. Piers's Statements That Were Admitted At Trial Were Suppressible, As Both Statements Were The Product Of Impermissible Custodial Interrogation.

Mr. Butler rendered ineffective assistance by not moving to suppress two damaging post-arrest unmirandized statements made by Mr. Piers—statements the government focused on throughout its case against Mr. Piers. Grounds 1.5 and 1.6. Rather than addressing the strong arguments Mr. Piers set forth in his most recent pleadings (Reply at 12–17, Post Hrg. Arg. at 16–26), the government attempts to dismiss these claims by simply stating that Mr. Piers has not established that these statements were the result of custodial interrogation, and not simply volunteered. Gov't Response at 6.

Once again, the government's argument stands only if one ignores the law. Both statements were clearly a result of impermissible custodial interrogation, and no competent legal practitioner could suggest otherwise. When an individual is subjected to custodial interrogation without first being administered *Miranda* warnings, any statements made by the individual are suppressible. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). The circumstances surrounding the statements in question here epitomize what the *Miranda* case was about.

Under the law, a person is in custody if "under the circumstances, a reasonable person would believe that he is not free to leave." *United States v. Melvin*, 91 F.3d 1218, 1222 (9th Cir. 1996). The first of Mr. Piers's statements, made to Officer Bloodgood, occurred while Mr. Piers was in the back of a police car, having been placed there by officers. The second statement, made on videotape, occurred while Mr. Piers was in an interrogation room at a police station, after having been held there for a significant length of time in handcuffs. No reasonable person would feel free to leave either situation. It is irrefutable that Mr. Piers was in custody during both statements.

14

Under the law, "interrogation" includes not only express questioning, but also "any words or actions on the part of the police . . . that police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). The first statement Mr. Piers made was in response to direct questioning by Officer Bloodgood—questions regarding other suspects involved in the robbery. RT 4-22 (testimony of Officer Bloodgood that he asked Mr. Piers "where the other suspect was" and "for the other suspect's name"). The second statement was in response to a classic law enforcement interrogation tactic—playing one suspect against the other. *See* Post Hrg. Arg. at 22–23. This tactic has been taught in law enforcement classes for decades. *Id.* Any assertion that this was not a tactic specifically designed to elicit incriminating information from Mr. Piers is baseless. When considered with the deception employed by Detective Vanderveur in turning off the audio tape yet leaving the video tape recording, as well as the fact that Detective Vanderveur used the same technique in questioning co-defendant Raymond Hubbard, the government's position is meritless. Post Hrg. Arg. at 19–26. Both of these statements were the result of unmirandized custodial interrogation.

The government also states that Mr. Butler's "assessment of the merits of the motion" and his "decision not to file any motion to suppress" was reasonable and within the scope of competent representation. Gov't Response at 7. This statement holds up only if one ignores both the record and the law. First, Mr. Butler clearly stated that *he could not recall* why he did not file a motion to suppress. Evid. Hrg. at 63 (testimony of Mr. Butler, referring to the statement to Officer Bloodgood, stating "I could not tell you [why I didn't file a motion to suppress] . . . ."); *id.* at 88 (testimony of Mr. Butler, referring to the videotaped statement, stating "I don't remember what my thinking pattern was, but I'm just thinking through things as I'm

15

sitting up here . . . ."). As such, there is no evidence to support any argument regarding "Mr. Butler's assessment of the merits of the motion." *Alcala*, 334 F.3d at 871 (finding it "contrary to our caselaw" to "find a strategic basis of trial counsel's actions in the absence of any evidence"). *See also id.* ("We will not assume facts not in the record in order to manufacture a reasonable decision for [defendant's] trial counsel.").

Second, with respect to the videotaped statement, at the evidentiary hearing Mr. Butler demonstrated a fundamental misunderstanding of the *Innis* doctrine: that interrogation includes not only express questioning, but also any statement that an officer should know is reasonably likely to elicit an incriminating response. 446 U.S. at 300–01. According to Mr. Butler's own testimony, in his mind *Innis* only applies "once the questions are put to [the suspect]." Evid. Hrg. at 88. *See also* Post Hrg. Arg. at 21–26. This is simply not the case. *Innis*, 446 U.S. at 300–01. Because Mr. Butler clearly "fundamentally misunderstood" the *Innis* doctrine, he "thus lacked the legal understanding necessary for a competent tactical decision." *Edwards v. Lamarque*, 2005 WL 3358845 at *6–*7 (9th Cir. Dec. 12, 2005). *See also* Post Hrg. Arg. at 19–26. The government's stance that this was a reasonable tactical decision is indefensible. The same is true for Mr. Piers's statements to Officer Bloodgood, as the government has not explained how those statements could ever be considered voluntary as opposed to a response to the *direct questions asked by Officer Bloodgood*.

Indeed, Mr. Butler himself labeled the statement to Officer Bloodgood as "damaging," and agreed that where a client who makes such statements was not mirandized, "a motion should be filed." Evid. Hrg. at 59, 64. He agreed that the failure to file a motion in such a situation was "a mistake." Evid. Hrg. at 64. With respect to the videotaped statement, Mr. Butler agreed that

16

the statement was "extremely damaging" and that "if there had been any grounds to move to suppress that statement a motion to suppress should've been made." Evid. Hrg. at 67.

The government further argues Mr. Piers's statements were merely "ambiguous" and that their admission at trial did not influence the jury deliberations, because of the "substantial" circumstantial evidence against Mr. Piers. Gov't Response at 7. Presumably, the government is referring to the prejudice prong of the *Strickland* test for ineffective assistance. To make this argument, the government must again blind itself to the record of the case.

With respect to the machine gun count for which Mr. Piers is serving a consecutive 30-year sentence, there was very little circumstantial evidence that Mr. Piers was the shooter. In fact, the *only* evidence that Mr. Piers fired the machine gun came through the testimony of admitted co-conspirator and cooperating witness Raymond Hubbard, who had a considerable motive to deflect attention away from himself as the shooter. Indeed, Anchorage Police Officer Dan Reeder, who was in the patrol car that was fired upon, and the only witness to the shooting, testified that it was Hubbard, not Piers, who fired the machine gun. 2255 Motion at 14–15; Reply at 22–24; Post Hrg. Arg. at 32–37. Were it not for Mr. Butler's incompetent cross-examination of Officer Reeder, there is a substantial probability that Mr. Piers would have been acquitted of the machine gun count. *See id.* An assertion that there was substantial circumstantial evidence against Mr. Piers with respect to the machine gun count is a vast overstatement and misconstrues the record.

As for the other counts of conviction, regardless of how the government labels Mr. Piers's statements now as it attempts to diffuse their import, the fact remains that the government introduced both statements at trial, and referred to the videotaped statement multiple times in both its opening statement and its closing argument. Trial 1-144, 5-22, 5-53. If the statements

17

truly are as innocuous as the government now claims, one must wonder why the government repeatedly called the jury's attention to them throughout the trial. The government cannot "chang[e] its position over the course of judicial proceedings," because "such positional changes have an adverse impact on the judicial process." *Russell v. Rolfs*, 893 F.2d 1033, 1037–39 (9th Cir. 1990). *See also* Reply at 16–17.

As a final argument, the government claims that Mr. Piers's unmirandized statements did not influence the jury because the jury acquitted Mr. Piers "on one of the credit union robbery counts." This argument is without merit. First, Mr. Piers was only charged with one count of credit union robbery. The charge he was acquitted of was an *attempted* credit union robbery that allegedly took place months before the actual robbery. Second, the statements in question all occurred the day of the actual robbery, and bore no relation whatsoever to the earlier attempt. Indeed, in arguing to the jury, the government made no attempt to link Mr. Piers's statements on the day of his arrest to the earlier attempted robbery. It is erroneous to suggest that the acquittal for the attempt charge demonstrates that Mr. Piers's statements had no effect on the jury.

Mr. Piers's Post-Evidentiary Hearing Argument presents in detail why Mr. Butler's failure to move to suppress either of these statements constituted ineffective assistance of counsel under *Strickland*. Post Hrg. Arg. at 16–26. As with the other arguments set forth in that pleading, the government has made no attempt to rebut any of them, nor has it attempted to distinguish any of the myriad cases cited that support a finding of ineffective assistance.

### H. The Multitude Of Errors Made By Mr. Butler, Individually And Cumulatively, Warrant Granting Mr. Piers's 2255 Motion.

In apparent response to the rest of Mr. Piers's claims regarding Mr. Butler's multiple and egregious errors at trial, the government simply makes the untrue statement that Mr. Piers suggests Mr. Butler should have been a "perfect attorney" at trial. Gov't Response at 8. In what

has now become a recurring theme, the government has simply substituted rhetoric for arguments of substance. This position in particular is puzzling, as nowhere in any of Mr. Piers's various pleadings has he ever suggested that Mr. Butler should have been "perfect" or that he was entitled to a "perfect trial." Rather, as Mr. Piers has submitted throughout, he was entitled under the Sixth Amendment to a reasonably competent attorney. Mr. Butler committed a series of errors from the onset of his representation of Mr. Piers—errors that worked a significant detriment on Mr. Piers and his defense. Further, it should be noted that the government has not addressed the vast majority of these errors, thus the arguments raised by Mr. Piers in his Post-Evidentiary Hearing Argument remain unrebutted.

In his Post-Evidentiary Hearing Argument, Mr. Piers presented in detail the litany of shortcomings attributable to Mr. Butler during his representation of Mr. Piers, beginning with his failure to do any investigation whatsoever and refusal to move to withdraw in a timely manner, and ending with his concession of guilt—without Mr. Piers's consent—in closing argument. Post Hrg. Arg. at 56–64. Rather than reiterate them here, Mr. Piers refers the Court to those pages. *Id.* Absent these errors, the trial still would have been far from "perfect," as the government suggests. Rather, absent these errors, Mr. Butler's representation may have approached minimal competence. As argued extensively in Mr. Piers's previous filings, all of these failures, considered individually, warrant a finding of ineffective assistance of counsel. When considered together as a consistent pattern of incompetence, the "violations present a particularly compelling claim of cumulative error, because the combined effect of these errors was more powerful than that of the errors taken individually." *Sims v. Brown*, 425 F.3d 560, 601 (9th Cir. 2005) (Fletcher, J., dissenting).

## CONCLUSION

To succeed on any or all of these claims of ineffective assistance, Mr. Piers must prove the underlying facts by a preponderance of the evidence. *Alcala*, 334 F.3d at 869. A review of Mr. Piers's extensive arguments from this and his previously filed pleadings shows that he has met this burden, particularly when compared to the evidence presented by the government against his claims. The government states that Mr. Piers has "utterly failed to establish" ineffective assistance of counsel, yet it has offered nothing of substance to support this bold statement. Gov't Response at 8. The government's position that there is absolutely no merit to even a single one of Mr. Piers's claims serves only to undermine its credibility with respect to the few arguments it does present. The Court should consider the lack of substance in the government's Response as further support for Mr. Piers's claims, and should recommend that this motion be granted.

Respectfully submitted this ___2nd___ day of February, 2006,

Michael R. Levine

Matthew G. McHenry

Attorneys for Mr. Piers

20

*United States v. William Piers*, Case No. A00-0104 CR (HRH)

### CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I served the foregoing REPLY TO

GOVERNMENT'S POST-EVIDENTIARY HEARING WRITTEN SUMMATION IN

OPPOSITION TO DEFENDANT'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C.

§ 2255 by depositing a true copy of same in the United States Mail addressed as follows:

> Stephan A. Collins
> Assistant United States Attorney
> Federal Building & U.S. Courthouse
> 222 West Seventh Avenue, #9, Room 253
> Anchorage, AK 99513-7567

Dated 2/2/06

Matthew G. McHenry