# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br><br>    vs.<br><br>WILLIAM EDWARD PIERS,<br>RAYMOND LEE HUBBARD, II,<br>DONALD DOUGLAS FRANKLIN,<br><br>                Defendants. | A00-104 CR (HRH)<br>**3:00-cr-00104-HRH-JDR**<br><br>**<u>RECOMMENDATION<br>REGARDING<br>MOTION TO VACATE</u>**<br><br>(Docket No. 203)<br>(William Edward Piers) |

Defendant **William Piers** moves the court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Docket No. 203. The grounds for relief are summarized on page. 5. The motion is opposed by the government. Docket No. 212. Piers filed a reply. Docket No. 216. An evidentiary hearing was conducted on the petition as to certain claims of ineffective assistance of counsel and

allegations that the government breached its duty to provide exculpatory information to the defendant pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).   A Recommendation was prematurely filed (Docket No. 204) and withdrawn. Defendant filed his supplemental briefing at Docket No. 247, 250; the government's supplemental opposition was filed at Docket No. 251.  The defendant filed a reply to the government's supplemental opposition at Docket No. 252.    Upon due consideration of the evidence adduced at the evidentiary hearing and the arguments of counsel and record herein ***the magistrate judge recommends that the court deny the motion to vacate, adopting findings of facts and conclusions of law as set forth below.***

### Procedural History

William Piers was indicted by the Federal Grand Jury and charged with criminal offenses relating to a June 27, 2000 armed robbery of the Credit Union One in Anchorage, Alaska.  Count 1 charged Piers, and co-defendants Donald Douglas Franklin and Raymond Hubbard with conspiracy to commit armed credit union robbery in violation of 18 U.S.C. § 371; Count 2 charged all three defendants with armed credit union robbery in violation of 18 U.S.C. § 2113(a) & (d); Count 3 charged all three defendants with conspiracy to use or possess a firearm in relation to a crime in violence in violation of 18 U.S.C. § 924(c)(1)(a) and 18 U.S.C. § 924(o); Count 4 charged Piers and Hubbard with carrying a semi-automatic assault weapon

in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) & (B)(i); Count 5 charged Piers alone with using a machine gun in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) & (B)(ii); Count 6 charged Piers with possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); and Count 7 charged Piers and Franklin with attempted armed credit union robbery in violation of 18 U.S.C. § 2113(a) & (d). All of the charges except Count 7 related to events occurring on or about June 27, 2000. Piers entered a plea of not guilty. He was represented at trial by retained counsel Rex Butler.[1]

Six days prior to trial, on January 30, 2001, Mr. Butler moved to withdraw as counsel for Piers. The U.S. District Court held an ex parte hearing on January 31, 2001 and denied the motion. On February 9, 2001 after jury trial before the Honorable H. Russel Holland, Piers was convicted of the first six counts. He did not testify at trial. Piers was acquitted on Count 7, attempted armed credit union robbery. *See* Docket No. 188.

Piers moved for substitution of counsel on April 20, 2001. Doc. 106. Attorneys Donald B. Marks and Fay Arfa appeared for Piers. Butler's motion to withdraw, doc. 112, was granted on May 23, 2001. Doc. 115. By motion and order

---

[1] On November 8, 2000 before Judge H. Russel Holland, Hubbard pled guilty to Count 4 of the Superseding Indictment that contained an allegation of violation of 18 U.S.C. § 924(c)(1)(A) and (B).

Piers' sentencing was continued to August 3, 2001, and then to August 9, 2001. *See*, Docs. 114, 116.

On August 9, 2001, the District Court sentenced Piers to 468-months in federal prison. He was sentenced to 60-months on Counts 1 and 6, and 108-months on Counts 2 and 3, to be served concurrently. He was also sentenced to a 120-months on Count 4, and 360 months on Count 5, to be served concurrently. The term imposed for Counts 1, 2, 3 and 6 was made consecutive to the term imposed for Counts 4 and 5. During sentencing Piers was represented by attorney Donald Marks.

Piers appealed his conviction. Docket No. 145A. The Ninth Circuit Court of Appeals affirmed in part and reversed in part. *See* Judgment, Docket No. 189. On appeal Piers was represented by attorneys Donald Marks and Fay Arfa. The Ninth Circuit affirmed Piers' convictions and the term of his sentencing. *See* United States v. [Franklin] Piers, 321 F.3d 1231 (9th Cir. 2003). Piers raised numerous arguments in his appeal. He appealed the denial of the Sixth Amendment right to counsel based on irreconcilable conflict between Piers and Butler. He challenged the District Court's denial of the motion to withdraw by Butler as counsel. He challenged the sufficiency of the evidence tying him to the automatic weapon in Counts 4 and 5 and to prove that he knew the weapon was capable of being fired as an automatic weapon, and that he fired the machine gun. He claimed the District

Court failed to properly instruct the jury that Piers knew the firearm operated as a machine gun.  He argued that the trial court should have instructed the jury to determine unanimously whether the weapon was either a semi-automatic or an automatic weapon.   He argued that he was denied due process by the trial court failing to issue a unanimity instruction to the jury that the firearm used was an automatic.  He argued that the District Court failed to properly instruct the jury regarding accomplices.  He argued that he was denied due process at sentencing when the District Court considered the use of an automatic machine gun in determining the sentence.  Finally, he claimed that the accumulative errors of the district court required reversal.

The court of appeals vacated the concurrent sentence imposed on Count 4 but this had no effect on Piers' actual underlying sentence.  Piers' Petition for Rehearing and Petition for Rehearing en banc were denied.  Docket No. 190. The United States Supreme Court denied Piers' Petition for Writ of Certiorari on October 6, 2003.   Piers v. United States, 124 S.Ct. 161 (2003).   On September 29, 2004 Piers filed a Motion to Vacate within the statutory time limits imposed by 28 U.S.C. § 2255.

## Grounds for Relief

The motion to vacate alleges ineffective assistance of counsel rendered by trial attorney Rex Butler, ineffective appellate counsel rendered by Donald Marks

and attorney Fay Arfa, denial of due process by the district court when it failed to sua sponte appoint substitute counsel for Butler and at sentencing imposed sentencing enhancement factors based on facts not determined by the jury trial beyond a reasonable doubt.  The motion to vacate further alleges that the government violated its duty under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny when the government withheld from disclosure part of the plea agreement between the government and co-defendant Ray Hubbard, namely, the promise that the government would not pursue its investigation against Hubbard's sister Megan.  It also alleged that the government withheld exculpatory evidence relating to the existence of a person named "Adam."  The ineffective assistance of counsel claims are stated with more particularity in the discussion below.

<strong>Standard for Ineffective Assistance of Counsel Claims</strong>

Ineffective assistance violates the Sixth Amendment right to the assistance of counsel.  Claims are subject to analysis under the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984).  A claim of ineffective assistance of counsel on appeal is also evaluated under the same two-part test enumerated in Strickland.  *See* United States v. Birtle, 792 F.2d 846 (9th Cir. 1986).

The Strickland analysis requires that the criminal defendant show not only that his attorney's representation was deficient but also that the attorney's representation prejudiced his cause.  *Id.* at 693.  The defendant bears the burden

of demonstrating that his attorney's performance was "so deficient that it fell below an objective standard of reasonableness." Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002). "Judicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. A defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see also* Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001)(Defendant "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.").

        To establish prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* "It is not enough for [a defendant] to show that the errors had some conceivable effect on the outcome of the proceedings. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceedings." *Id.* at 693.

A court need not determine whether counsel's performance was deficient before examining the prejudice suggested by the defendant as a result of the alleged deficiencies. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness of counsel claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Strickland at 697.

To succeed on a claim of ineffective assistance from appellate counsel, defendant must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's unprofessional errors, the defendant would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). An appellate counsel has no obligation to raises every non-frivolous issue requested by defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). Appellate counsel's failure to raise an issue on appeal does not constitute ineffective assistance of counsel if counsel had no reasonable likelihood of success in arguing the issue. Morrison v. Estelle, 981 F.2d 425, 427-28 (9th Cir. 1992).

//

//

## Factual Findings from Evidentiary Hearing
## Regarding Butler's Representation of Piers

Rex Butler has been an attorney since October 1978. His practice includes both private retainers and court appointments in both the federal and state courts. He has represented defendants in a variety of matters ranging from traffic tickets to murder in the first degree. In August 2000 Rex Butler was retained by Mary Hutchison, mother of William Piers to represent Piers in the defense of his case. She paid Butler $7,500.00 and later gave him another $2,500.00 to use for investigation. Her testimony does not reveal when she gave these monies to Butler. Prior to the trial of the case Hutchison orally fired Butler. She later put it in writing. Her testimony at the evidentiary hearing does not indicate when these events occurred. Pursuant to Butler's request for CJA appointment on February 6, 2001, he was appointed by the court to represent Piers. *See* Docket No. 79.[2]

Mary Hutchison discussed the topic of character witnesses with Rex Butler prior to trial. She gave him a list of potential character witnesses. The potential character witnesses included the following: Roger Waldron, a commercial fisherman from Eegik, Alaska, who had known William Piers for three years prior to the trial. He considered they were good friends; Agnus Wigigon, Anchorage, Alaska,

---

[2] After trial, Donald Marks and Fay Arfa. *See* Docket No. 115.

Piers' grandmother; Thelma Brinson, a friend of Piers' mother and grandmother; Jessie Barnhill, Anchorage, a friend of Piers' family, David Waldron, Garth Raft, Macon Roberts, and Robin Miller.  None of the potential character witnesses were contacted by Butler or anyone on his behalf prior to trial.  None of the character witnesses were eye witnesses of the robbery or had been to The Credit Union One prior to the day of the robbery.  Each of the character witnesses was prepared to testify that William Piers was not a violent person nor a person likely to fire a machine gun at a police officer.

Mr. Butler did not speak directly with the potential character witnesses because he decided not to place the character of the defendant in issue.  Tr. Evidentiary Hearing, p. 118.  The attorney was concerned that the evidence might put the government on notice concerning the nature of his character in general and specifically about the propensity to shoot at a police officer as well as opening the door to other evidence seized at the search warrant including "the anarchist cookbook."  Tr. Evidentiary Hearing, p. 179.

Six days prior to trial Butler moved the district court to relieve him as trial counsel.  The district judge denied the motion.  Mr. Butler obtained an acquittal for Mr. Piers on the count charging him with attempt to commit armed robbery of the same credit union on a prior occasion.  Mr. Butler obtained discovery from the government that included over a thousand pages of reports, photographs and video

tapes.  Mr. Butler did not always get along with Piers but he stated that it was not unusual not to see eye-to-eye with a defendant facing such serious charges.  The attorney visited Piers at the jail facility more than three times prior to trial.

Mr. Piers asked Butler to conduct an investigation to locate an individual named "Adam" who might have been responsible for some of the criminal conduct including the shooting at the credit union and firing the machine at Officer Reeder. The discovery from the government did not provide information about an "Adam." Mr. Butler inquired of the U.S. Attorney's office about the name "Adam" coming up. Mr. Butler was not provided enough information or description about "Adam" to locate such a person.  Butler questioned whether "Adam" was a figment of his client's imagination or whether Piers was trying to protect his friend by holding back information about his location.

Although the police reports did not reflect Piers being given a <u>Miranda</u> warning prior to making an incriminating statement at the arrest scene, Butler did not file a motion to suppress such statements.  Mr. Butler did not recall enough of the events to explain why no suppression motion was filed.  Mr. Butler was asked at the evidentiary hearing why he had not filed a motion to change venue.  After stating he had no independent recollection, Butler explained that the venire pools for federal juries include people residing outside of Anchorage.  Usually an attempt is made to

empanel a fair and impartial jury by posing questions to the venire when the case has achieved a certain amount of publicity in Anchorage.

Mr. Butler was asked why he did not make an opening statement at the trial. Mr. Butler explained that he did not want to give away any defense. He added that he was concerned that the jury would decide the case prematurely. Mr. Butler believed that the government had overwhelming evidence against Mr. Piers to prove his participation in the events; thus, his focus was on attempting to avoid a conviction for the offense of using, carrying or possessing a machine gun since it carried a maximum of life with a minimum of thirty years consecutive to any other sentence.

"CIA Badges" were admitted by stipulation at trial as Exhibits 35A and 35B. Although Butler did not consider the badges to be relevant to the case he thought their admissibility were innocuous. Mr. Butler did successfully object to the attempt by the government to introduce evidence seized from Piers's computer, namely, an "anarchist hand book." A video taped interview of Piers in the police holding cell recorded an incriminating statement made by Piers. Piers had asked that the tape recorder be turned off and as the video shows the officer complied although the officer did leave running the video taping with sound. It is not evident from the video tape whether Piers knew or did not know that he was being video taped at the time. No motion to suppress this statement was made. Mr. Butler

considered the statement to have been "volunteered", not made in response to questioning by the officers.  The attorney was asked at the evidentiary hearing whether the incriminating statements could have been made in response to statements by officers designed to elicit an incriminating statement from the defendant.  Mr. Butler explained that he considered the situation different from that governed by <u>Rhode Island v. Innis</u>, particularly because of the interplay of the officer wanting to read the <u>Miranda</u> warnings to Piers.

Testimony was adduced regarding the existence of a person named "Adam" who may have been responsible for some of the alleged misconduct.  Co-defendant Franklin did not match the description of Adam as described by Hubbard.  According to Hubbard, Adam was present when Hubbard discussed the plans of the robbery with Piers.  At trial Hubbard testified that he assumed that Adam would receive some of the proceeds of the robbery.  The federal agents interviewed several persons and reviewed the names in Hubbard's address book that was recovered to see if it shed any light on an "Adam."  Agent Henderson initially thought that Adam was a figment of Hubbard's imagination at least as to the alleged participation in the crime.  Hubbard initially said the individual was named Jonathan Cutty.  Hubbard talked about "Adam" before the Grand Jury as well as during his cross-examination by Rex Butler.  The tips did not suggest that Adam was a member of any group which might have helped the officers in tracing his whereabouts.

During the prosecutor's closing argument to the jury the AUSA described where Piers was found in a swamp dressed as a man who entered the bank. Trial Transcript 5-22. The prosecutor added "and he said, I know I've committed a crime and I'm going away for a long time." Later the prosecutor rhetorically asked what part Piers had played. At the time of his arrest Piers stated, "I know I already turned myself into a criminal, but I'd like to do whatever it takes to work things out. But obviously I'm gone for a long time. And I'll be honest with you."

During the prosecutor's opening statement he described a "man in black" which turned out to be William Piers who was found in a swamp. The prosecutor continued: "Mr. Piers is accompanied to the Anchorage Police Department. He tells Officer – – Agent Henderson he knows he's committed a crime." Counsel for Piers at the evidentiary hearing on the § 2255 motion reminded Butler that the prosecutor had referred to Piers's incriminating statement in both his opening and closing to the jury. Butler was asked why he had not filed motions to suppress the statements.

A defendant is entitled to a fair trial but not a perfect one. Many of the questions asked Butler at the evidentiary hearing fall into the category of what "could have been done, not "what was done, and why." For example, Butler could have argued with the district judge that the Ninth Circuit Model Instruction regarding viewing an accomplice's testimony with distrust was wrong. Tr. Evidentiary Hearing,

pp. 121-123. Mr. Butler could have stated in his closing argument that co-defendant Franklin had access to Piers's apartment. Tr. Evidentiary Hearing, p.146. Mr. Butler could have filed a motion for judgment of acquittal even though it appeared frivolous to him.

Mr. Butler and the prosecutor stipulated that materials relating to directions on how to obliterate serial numbers found on Piers's computer could come into evidence. Mr. Butler did not object when Agent Payne talked about 28 CDs of information found on the computer. Tr. Evidentiary Hearing, p.93. Mr. Butler aptly points out that Mr. Payne had not stated that the government received 28 disks of bad information from Piers's computer. Mr. Butler explains his strategy in that regard as not wanting to highlight the volume of information on Piers's computer reviewed by the government.

At trial the government used a mannequin dressed in the clothes supposedly worn by the bank robber even though all the items of clothing were not found together. Counsel for Mr. Piers at the evidentiary hearing asked Butler about an objection that he could have made that the mannequin did not fairly represent the state of the evidence as it was found. Mr. Butler explained that he did not think that an objection would have done anything in terms of aiding the jurors' assessment and he was not sure whether it actually misrepresented the facts. Tr. Evidentiary Hearing, p.96. Mr. Butler concluded that the evidence was not substantially more

prejudicial than probative to be excludable under Rule 403 of Federal Rules of Evidence.

Mr. Butler explained his theory of the defense as centered on the argument that Piers was not the shooter. He was trying to narrow the jury's focus on the charge that carried the most jail time because of the overwhelming evidence against Piers on the other charges. Tr. Evidentiary Hearing, pp. 102, 151.

During the defense summation Butler told the jury that his client was "involved" in a conspiracy to take money from Credit Union 1, Diamond Branch. Trial Transcript, 5-33. This was not a concession that Mr. Piers was guilty of all the charges before the jury.

The defense faults Butler for not arguing in summation that no fingerprints were found on the Norinco. Mr. Levine asked Butler at the evidentiary hearing if he thought that he should have made such an argument in closing. Tr. Evidentiary Hearing, p.133. Mr. Butler pointed out that there were no identifiable fingerprints found on the weapon although it was clearly fired by someone. Butler responded that it would have been different if someone else's fingerprints had been found on the weapon. Butler added that you can not go over every piece evidence in closing because of the limited time for summation and because you want to keep the jury focused on your major points. Thus, Mr. Butler saw no need to point out to

the jury that Mr. Piers was a secretor because his prints were found on other items in the truck but were not found on the weapon.  Tr. Evidentiary Hearing, p. 135.

Mr. Shem testified for the government that he was able to recover the serial number from the Norinco and it matched parts taken from Mr. Piers's residence.  Mr. Shem also testified that the parts that were recovered from Piers's residence had indicia of having been used or attempted to be used in making a Norinco a fully automatic weapon.  Tr. Evidentiary Hearing, p.127.

## Discussion

### I.    Adequacy of Counsel's Representation at Sentencing

**Whether Piers's Attorney Donald Marks
Rendered Ineffective Assistance of Counsel at Sentencing
by Failing to Raise an <u>Apprendi</u> Error**

Piers contends that Donald Marks was constitutionally ineffective at sentencing for not raising an <u>Apprendi</u> error with respect to the sentence imposed for Counts 1 and 2.  Piers also argues that his appellate counsel were ineffective by failing to raise <u>Apprendi</u> issues in his appeal of his sentence.  Count 1 charged conspiracy to commit armed credit union robbery and Count 2 charged armed credit union robbery.  Piers's sentencing took place on August 9, 2001.

The court grouped Count 1 with Count 2 for sentencing purposes.  The base offense level was 20.  The court imposed a nine level enhancement including two levels because the principal victim was a financial institution, two levels due to

the physical restraint of the victim tellers, three levels because the loss to the credit union was over $250,000, and two levels because Piers was found to be an organizer.  The first enhancement relating to the principal victim being a financial institution was an element found by the jury beyond a reasonable doubt.  The remaining seven levels were argued before and found by the court during the sentencing phase.  *See* Transcript of Imposition of Sentence, p.11, 18.

On June 26, 2000 the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466 (2000), establishing the rule that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.  Piers argues that the seven level enhancement imposed on him for Counts 1 and 2 should have been submitted to a jury and proved beyond a reasonable doubt.  He cites Blakely v. Washington, 124 S. Ct. 2531(2004) holding that the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional fact findings.  He cites United States v. Ameline, 376 F.3d 967, 974 (9th Cir. 2003) holding that the Blakely rule applies to the United States Sentencing Guidelines.

Attorney Marks argued that the proper standard for sentencing enhancements was a preponderance of the evidence.  Indeed, that was the standard at the time of sentencing.  At the time of Piers' sentencing, Blakely had not been

decided, and so it could not possibly have been employed by defense counsel as a basis for appeal.  Under <u>Apprendi</u> the court's sentence in this case did not exceed the prescribed statutory maximum sentence, so there was no basis for reliance upon <u>Apprendi</u>.  Likewise, the argument that the district court violated Piers's Fifth and Sixth Amendment rights to a jury trial and to due process of law by finding enhancing factors at sentencing by a preponderance of the evidence fails.   Even at this date the Supreme Court has not rendered <u>Booker</u> retroactively to cases on collateral review.  Circuit courts including the Ninth Circuit which have addressed the question have held that <u>Booker</u> does not apply retroactively.  *See* for example, <u>United States v. Cruz</u>, 423 F.3d 1119 (9th Cir. 2005).   Piers has not shown that Marks was incompetent for failing to  advocate for a different standard of proof with respect to sentencing enhancement factors.  An attorney is not required to be clairvoyant in order to render constitutionally adequate representation.

The trial court found several enhancements for the sentence imposed based on a preponderance of the evidence rather than relying only on the underlying facts for an enhancement that were found by the jury beyond a reasonable doubt. Piers argues that the  enhancements imposed on Piers for Counts 1 and 2 should have been submitted to a jury and proven beyond a reasonable doubt and that Mr. Marks failed to make that argument during sentencing although <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) had been decided on June 26, 2000, more than a year

earlier than the August 9, 2001 sentencing hearing.  Piers argues that had Marks made an Apprendi argument it would likely have been meritorious as demonstrated by the outcome of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004) holding that "the relevant 'statutory scheme' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

The standard at the time of Piers's sentencing was the preponderance of the evidence standard argued by Mr. Marks.  United States v. Ameline, 376 F.3d 967, 974 (9th Cir. 2003), holding that the Blakely rule applies to United States Sentencing Guidelines was decided after Piers's sentencing.  At the time of the imposition of sentence on Piers, Apprendi did not apply to the United States Sentencing Commission Guidelines.  Under contemporary Supreme Court decisions case law inferred that the guidelines in the manner in which they were applied in Piers's case were constitutional.  See Mistretta v. United States, 488 U.S. 361 (1989) and Edwards v. United States, 523 U.S. 511 (1998).

The Ninth Circuit had not held that Apprendi precluded the court from applying the Guidelines in the manner used in Pier's sentencing.  Thus, the failure to make an Apprendi objection to the use of the Guidelines was consistent with the practice of the overwhelming majority of counsel practicing in federal courts.  Mr. Marks did not render constitutionally ineffective counsel by failing to be clairvoyant

or by failing to assert new arguments not previously before the appellate courts. Piers's claim fails to meet the Strickland criteria.

At the time of Piers's sentencing, Apprendi by its terms did not apply to the United States Sentencing Commission Guidelines. Contemporary law such as Mistretta v. United States, 488 U.S. 361 (1989) suggested that the guidelines in the manner in which they were to be applied in Piers's case were constitutional. Piers has not established that Marks' decision not to make an Apprendi argument fell outside of the standard for competent representation at the time of his sentencing hearing. For similar reasons appellate counsel were not constitutionally ineffective by not raising an Apprendi issue on appeal.

### Whether Marks Rendered Ineffective Assistance of Counsel by Failing to Argue for Downward Departures

Piers also argues the Mr. Marks rendered ineffective assistance under Strickland by failing to argue for available downward departures. The argument in this regard is that Marks should have argued for a downward departure based on a showing of compassion and concern by Piers for the life of another based on teller Chastity Monette's testimony that Piers wrapped the tape around the teller's mouth rather than her nose when she complained that she had difficulty breathing. It is mere speculation as to why Piers decided to tape the teller's mouth rather than her nose. It may have been an act of compassion and it may not have been. Should the attorney have argued for a downward departure because Mr. Piers did not shoot the

teller?  Should any act of compassion have been deemed to have offset the anxiety and fear instilled in the teller by taping her mouth in the first place?  Failure to argue for such a downward departure did not constitute ineffective counsel under Strickland.  Pp. 40-42.

Piers does not point to any particular guideline that might be applicable to a situation where a defendant refrains from causing greater injury to a victim than he actually did.   The defendant cites no authority supporting his argument that his attorney rendered ineffective assistance under Strickland v. Washington for not arguing for such a downward departure.  This argument by the defendant is clearly meritless.

## II.     Adequacy of Appellate Counsel's Representation

**Whether Appellate Counsel Rendered
Ineffective Assistance of Counsel Based on Failure to Argue
That Butler Had an Irreconcilable Conflict with Piers
and Should Have Been Relieved from Representing Him**

Appellate counsel Fay Arfa and Donald Marks raised the issue of conflict between Piers and his trial counsel Mr. Butler stating that "[t]he record clearly demonstrates that a serious conflict existed between Piers and his attorney which prevented the attorney from providing adequate representation."   Defendant Appellate Brief, p.15.  Piers argues that those attorneys understated the extent of the conflict.

The record available to appellate counsel who did not try the case did not show the type of attorney-client relationship Piers now characterizes as going to the core of his attorney-client relationship where Butler allegedly acted as Piers' adversary, not his advocate. The Ninth Circuit Court of Appeals had adequate reference to the record before the district court to review the trial court's denial of the substitution of counsel motion. The defendant's argument fails to meet the Strickland criteria for ineffective counsel.

The Ninth Circuit Court of Appeals will entertain an ineffective assistance of counsel claim when the record on appeal is sufficiently developed to permit review and determination of the issue. United States v. Robinson, 967 F.2d 287, 290 (9th Cir. 1992). The facts supporting Piers's objection to the district court's denial of the substitution of counsel motion were sufficiently developed to support an argument on appeal.

A claim of conflict of interest on the part of trial counsel presents a mixed question of law and fact that the court of appeals reviews de novo. United States v. Moore, 159 F.3d 1154, 1157 (9th Cir. 1998). Under Moore, in order to establish a Sixth Amendment violation based on counsel's alleged conflict of interest, Piers must show that an actual conflict of interest adversely affected his lawyer's performance. He must prove actual conflict not just a possibility of conflict, through a factual showing in the record. *Id.* If the defendant has shown only a

possibility of conflict he must meet the performance and prejudice standard of Strickland.  *See* United States v. Miskinis, 966 F.2d 1263, 1668 (9th Cir. 1992).  In Moore, supra the court held that the defendant's threat to sue his defense counsel over counsel's handling of the government's offer of a plea bargain did not create an actual conflict of interest that would presumptively render counsel ineffective.

Piers did not convince the district court that the relationship between him and Mr. Butler had completely collapsed; thus, the motion for substitution of counsel was denied.  Piers did not have substitute counsel readily available for the trial date set.  There is no evidence of any bad language or threats being exchanged between Butler and his client.  Mr. Butler did not claim that as trial counsel he would not advocate zealously or effectively for his client. Piers still has not made an adequate showing in that regard.  As Mr. Butler explained at the evidentiary hearing, federal criminal defendants often express unhappiness with the situation they find themselves in prior to the date of trial.  The district court did not err in accepting Butler's characterization of his relationship with Piers.  The district judge considered the extent of the conflict as well as the timeliness of the motion.  Because the request was based upon a general dissatisfaction with the retained attorney the district court made an adequate inquiry, and appellate counsel did not render ineffective assistance of counsel in their arguments on this issue.

//

**Whether Appellate Counsel Rendered Ineffective Assistance
of Counsel by Failing to Raise on Appeal Butler's
Concession of Guilt on the Conspiracy Counts**

Butler did not concede guilt as to both conspiracy counts.  He explained at the evidentiary hearing that his strategy was to concede the criminal charge where the government's evidence was very strong in the hope that the jury would find credible his argument that the government had not produced sufficient evidence to convict Piers of the gun related charge which carried a greater penalty.  Piers relies upon United States v. Swanson, 943 F.2d 1070 (9th Cir. 1991) wherein the court held that the court-appointed defense counsel's concession during closing argument that no reasonable doubt existed regarding the only factual issues in dispute constituted a deprivation of the defendant's right to due process and effective assistance of counsel.  The Swanson court found that the concession in that case denied the defendant fundamental fairness.  But the court recognized that in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges.  943 F.2d at 1076.

I conclude from the evidentiary hearing that Butler consulted with Piers before making the concession  and Piers at least had an opportunity to object if he did not agree to take the risk as to that trial strategy.  Butler's concession was not a clear violation of law as suggested by Piers.  Where the evidence identifying the defendant as the perpetrator is overwhelming it is not necessarily ineffective

assistance of counsel for the attorney to present a defense to persuade the jury to find the defendant not guilty of a greater offense. *See* United States v. Bradford, 528 F.2d 899 (9th Cir. 1975). Even if counsel had conceded the defendant's guilt without consulting him or obtaining his consent as part of a trial strategy to make a challenge to the other charges more credible, Piers still must prove prejudice under Strickland v. Washington, supra and United States v. Thomas, supra. Because it was part of Butler's trial strategy it did not constitute an abandonment of the client. The prejudice prong of Strickland test is not satisfied here.

Piers argues that Mrs. Arfa and Mr. Marks rendered ineffective assistance of counsel by raising the ineffective assistance of trial counsel claim on direct appeal rather than by collateral attack. This claim fails because Piers cannot show prejudice. He has not been precluded from raising that issue in this collateral proceeding. Because Butler's closing argument did not fall outside the boundaries of competent advocacy and did not constitute ineffective assistance of counsel, appellate counsel was not required to raise that issue on appeal because it had little likelihood of success. Morrison v. Estelle, 981 F.2d 425, 427-28 (9th Cir. 1992).

Piers faults the district court for not sua sponte appointing substitute counsel in place of Mr. Butler to argue the motion by counsel to withdraw. The premise of this argument is that in order to have merit, it must have become clear to the court that the conflict between Piers and Butler was irreconcilable. The district

court disagreed and denied the motion to withdraw.  In an attempt to reargue the matter Piers made several statements at the hearing before the district court denying that Butler had responded to his questions and claiming that he had not done anything in the case.  Mr. Butler told the court that this was simply not true and that such a statement was a lie.  Piers claims that this colloquy demonstrates that there was an irreconcilable conflict with his counsel.  However, the strong response by Butler was precipitated by the strong accusations made by Piers against his attorney.  Mr. Butler was not required to remain mute so that Piers could have a stronger (but false) basis for claiming that his attorney was denying him a fair trial.  The record shows that appellate counsel's performance did not fall below the standard of competency of counsel.

### III.    Constitutional Violations by Government

### Alleged Brady Violation by the Government

The defendant claims that the government withheld from the defense an important part of the plea agreement with Ray Hubbard, namely that Hubbard was promised that the government would not pursue an investigation against his sister, Megan, whose fingerprints were found on the map of the credit union located in Hubbard's backpack.  Piers has not offered proof of his assumption that Hubbard's plea agreement was induced by the government's promise of inaction

against his sister.  The testimony of Special Agent Lou Ann Henderson at the evidentiary hearing negates Piers's assumption.

There is no evidence that Hubbard's incentive to testify on behalf of the United States was motivated by the government's promise not to investigate or prosecute Hubbard's sister.  Hubbard's incentive to testify favorably on behalf of the government was likely in the hope that the government would file a substantial assistance reduction motion in his behalf.  The jury was made aware of this incentive.

Piers also accuses the government of withholding exculpatory information regarding the reference to "Adam" during their investigation.  Piers has not identified any exculpatory evidence regarding Adam allegedly held by the government during discovery or prior to trial.  Even at this date, years after the trial, the identity of Adam is unknown and his role in the criminal conspiracy, if any, remains speculative.  Piers has failed to show that the government violated his due process rights or violated <u>Brady v. Maryland,</u> <u>supra</u> by withholding from the defense information about Adam.

The fact that the prosecutor questioned Hubbard about "Adam's involvement" in the alleged conspiracy adds nothing to the instant claim.  Piers has continued to dispute that he was the individual who shot at the policeman and to deny his guilt as to the (conspiracy to use the gun in the robbery).  But he was not

denied any knowledge or information about Hubbard's reference to an "Adam" prior to trial.  Piers had a fair opportunity to present evidence to the jury that "Adam's" involvement in the alleged conspiracy should not be attributed to him.  Piers offers no evidence that he timely presented additional facts to Butler about Adam that might support his claim that the government knew something about Adam that it did not disclose to the defense.  Evidence is material under Brady, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985).  In the present case, the evidence against Piers was overwhelming, and there has been no showing of a reasonable probability that material evidence was withheld sufficient to undermine confidence in the outcome.

### IV.    Ineffective Assistance of Counsel Claims Against Trial Counsel

### 1.    Motion to Withdraw

Butler's motion to withdraw as counsel must be considered in the context of the court proceedings in this case.   It appeared that there were about 2,500 pages of discovery, plus physical evidence and a State search warrant which had not yet been unsealed by the State court, as well as pending laboratory results by the government before the case could be readied for trial.

On August 3, 2000, Judge Holland, the trial judge, stated that the case was out-of-the-ordinary and allowed attorney Bill Bryson to substitute for Geddes to represent co-defendant Franklin.  Franklin moved to sever his trial from the other defendants based upon an interlocking confessions.

Mr. Butler's motion to continue motion practice and the trial date was joined by co-defendants Franklin and Hubbard.  The court granted an extra 30 days on the grounds of continuity of counsel.  A motion to sever Franklin was granted and defendants Piers and Hubbard were set to be tried first on November 13, 2000.

Piers moved for severance from Hubbard on September 14, 2000 (Doc. 32).  That motion was denied on October 31, 2000, Doc. 53.  On October 18, 2000, a superseding indictment was filed.  The next day co-defendant Hubbard entered into a plea agreement with the government.  Piers was arraigned on the superseding indictment and pretrial motions for the Superseding Indictment were set for October 26, 2000.

On October 25, 2000, Piers moved unopposed to continue the trial set for November 13, 2000 (doc. 48).  The court set a hearing on that motion for November 7, 2000.  On that date, the court granted the continuance of trial to February 5, 2001, for defendant Piers with the trial-by-jury for defendant Franklin to trail.  (Doc. 54.)

On January 26, 2001, Piers moved to continue the jury selection. Doc. 64. A hearing was set for January 31, 2001. On January 30, 2001, Butler moved to withdraw as counsel. Doc. 73. On January 31, 2001, the court denied the motion to continue jury selection and the motion to withdraw. *See*, Doc.76. Trial by jury commenced February 6, 2001. Piers through his counsel Rex Butler moved for CJA appointment of counsel. Doc. 78. That motion was granted February 7, 2001. Doc. 79. The court appointed Rex Butler.

Piers argued on appeal that the district court should have allowed Butler as retained attorney to withdraw so he could obtain new counsel. The Ninth Circuit considered the following facts: "On January 26, 2001, Piers' mother wrote his trial counsel, Rex Butler, and requested that he withdraw from Piers' case. On January 30, 2001, six days before Piers' trial was scheduled to begin, Butler filed a motion to withdraw, stating that (1) the Piers family "is unhappy with my services"; (2) Piers "is unable and or unwilling to pay for the trial"; and (3) his motion is based on "the breakdown in attorney client communications." The appellate court also had before it Piers' explanation to the district court at the January 31, 2001, hearing wherein Piers explained to Judge Holland why he wanted Butler to withdraw. Piers stated: "I feel that there's been a gross negligence and a malfeasance on the part of the [FBI and Anchorage Police Department] due to the lack of investigation regarding the information that they've been given and . . . they've focused on me

from the beginning. . . . [A]nd the paperwork that I've generated while I've been held hasn't been acted upon by my counsel because I assumed there was a lack of funds, but there's a lot of investigations that I wanted completed, and there's a lot of people that I expected to be interviewed and a lot of other work done. So I don't know what to do. . . ." Butler responded to the trial judge that he believed Piers misunderstood the process to some degree and that Piers would not see him some of the times he went down to the jail because Piers' mother had told him not to talk with Butler unless she was in town. Piers denied that that was true and stated that he believed Butler did not have his best interest at heart.

Piers argued in his appeal that the district court failed to conduct an adequate inquiry to determine the nature and extent of the breakdown in the attorney-client relationship. In reviewing the denial of the substitution of counsel, the court of appeals considered not only the timeliness of the motion, but the adequacy of the trial court's inquiry and the extent of the conflict created. *See*, slip op. at 3838 9th Cir. (2003) filed as an attachment to the judgment at doc. 189.

The court of appeals found from the record that Piers had brought to his attorney's attention that he was dissatisfied with his representation ten days prior to trial, although Butler's motion to withdraw was not submitted to the trial court for another four days. In holding that the motion to withdraw was untimely, the court considered the fact that any new counsel would likely have needed a substantial

continuance to comply with Piers' expressed desires.  The trial had already been postponed once upon a motion by Piers.  With regard to the adequacy of the trial court's inquiry, the appeals court noted that the district court had allowed Piers to speak at great length about his reasons for desiring new counsel and that Piers and Butler were allowed sufficient time to detail the reasons for the request to withdraw as counsel.  Furthermore, the court of appeals held that Piers had not demonstrated that an extensive conflict existed with Butler.  Piers' dispute centered around the defense and litigation tactics.  The appeals court noted that litigation tactics are decisions generally left to defense counsel, citing United States v. Smith, 282 F.3d 758, 763 (9th Cir. 2002).  The Ninth Circuit also held that Piers had not demonstrated a conflict serious enough to warrant concluding that  his Sixth Amendment right to counsel was denied.

At the evidentiary hearing on the § 2255 motion, Mary Hutchison, mother of William Piers, testified that she retained Butler to represent her son. Sometime in November 2000 she demanded that Butler get off the case.  She later followed that request in writing.  Tr. Evid. Hrg, p.238.

Although Butler was retained to represent Mr. Piers around August 2000, Butler acknowledged that there had been several discussions about him getting off the case before he formally filed a motion.  In his opinion the discussions had not progressed to the point where he felt that he could not work with

the defendant in an attorney-client relationship prior to actually filing the motion to withdraw. Mr. Butler testified that he could not recall the specifics of Piers disliking his legal services. When shown the transcript of the colloquy before the trial court on the motion to withdraw, Mr. Butler had no specific recollection of the events or the testimony but agreed that the transcript appeared accurate. At the evidentiary hearing Butler explained why he did not move to withdraw at the initial first request of Mr. Piers' family.

There is no proof that Butler was fired by Piers as of a certain date. Under the circumstances it appears that Butler made an adequate effort to inform the court timely about the breakdown of attorney-client relationship after he had made a reasonable effort to try to work with Piers in preparation for trial.

The trial transcript reflects that after the motion to withdraw was denied, Piers was not left to go to trial with an attorney who was not effectively communicating with him or rendering effective assistance of counsel. A criminal defense lawyer is not required to accept at face value what his client tells him. During the trial, it appears that Butler and Piers had an adequate attorney-client relationship which did not prevent Butler from communicating with Piers or raising objections and submitting motions on his behalf. In his motion to vacate Piers claims that prejudice must be presumed. He points to no specific prejudice as to Butler's actual representation attributed to the late filing of the motion to withdraw. Under the

circumstances of this case I cannot find any presumption of prejudice enures to the defendant's benefit.

The record in the instant case fairly construed indicates that Piers was able to communicate with his counsel during key trial preparation times. Piers was able to communicate his defense theories to Mr. Butler although he did not agree with all of the trial strategy implemented by Butler. Mr. Piers was able to provide information he had to his attorney and to participate in the making of decisions in his prosecution. Piers has pointed to no critical stage of the proceedings in which he was prevented from assisting his attorney or receiving communications from his attorney. In the instant case, Judge Holland assessed the facts and determined that there was no complete breakdown in the attorney-client relationship. In the instant case, there is no reason to believe that different counsel would have been able to locate the missing "Adam" or produce additional material evidence based on what Piers communicated to his attorney. Since Piers asked for court-appointed counsel at the eve of trial, short of a serious breakdown in communications which was not shown to the trial judge, the trial court properly exercised its discretion to appoint the same attorney, Mr. Butler, who had substantial time invested in preparing the case for trial.

Piers cites Daniels v. Woodford, 428 F.3d 1181 (9th Cir. 2005), in support of his argument for or presumption of prejudice. The case in inapplicable.

Daniels was a 66-year old paraplegic on California's death row, having been convicted of two counts of first-degree murder for the shooting death of police officers. As a basis for his motion to substitute counsel before the State trial court, Daniels explained to the trial court that he had a conflict of interest with the public defender's office which had represented him in plea negotiations concerning a prior robbery arrest. The conflict arose when, unknown to Daniels, his public defender in the robbery case simultaneously engaged in negotiations with the district attorney's office for Daniels' plea while the attorney was negotiating for a position with the district attorney's office. Neither the prosecutor nor the public defender who replaced Daniels' first attorney apprised the court of the plea agreement's condition permitting Daniels to seek treatment in lieu of immediate incarceration. Daniels sought an attorney who was not a part of the public defender's office because he mistrusted that office. The court denied his motion for substitution of counsel. After exhausting his State remedies, Daniels sought *habeas* relief in federal district court. That court denied relief following an evidentiary hearing. In its opinion, the Ninth Circuit stated that a defendant has a Sixth Amendment right to conflict-free representation, but not every conflict between a defendant and counsel implicates the Sixth Amendment. 428 F.3d at 1196. Quoting from Morris v. Slappy, 461 U.S. 1, 3-4 (1983) the Ninth Circuit referred to the Supreme Court's explanation that the right to counsel does not guarantee "a right to counsel with whom the accused had

a 'meaningful attorney-client relationship.'" The Ninth Circuit proceeded to assess the nature and extent of the conflict and whether that conflict deprived the defendant of representation guaranteed by the Sixth Amendment.  First, the court noted that the conflict was not one created by Daniels or by his counsel.

In Daniels, the federal district court held that Daniels and his counsel were involved in a clear showing that the breakdown amounted to a constructive denial of his right to counsel.  On the basis of the record in Daniels, the Ninth Circuit held that the "serious conflict" gave rise to a presumption of prejudice.  The court found that the breakdown in communications so impeded counsel's ability to provide assistance as to the basic considerations for defense.[3]  Unlike the instant case, in Daniels the State trial court had never questioned Daniels or his attorney individually after Daniels informed the court of the conflict.  Another distinction in Daniels is that Daniels informed the trial court three months before the trial that he did not trust his appointed counsel and that his trial counsel could not properly represent him. 428 F.3d at 1200.  As a result of the conflict, Daniels' counsel was unable to discover the basic information necessary to defend Daniels.  Daniels' defense

---

[3] To determine whether Butler's alleged errors prejudiced Piers in the outcome of the trial this court must compare the evidence that actually was presented to the jury with that which could have been presented had counsel acted "appropriately."  See, Bonin v. Calderon, 59 F.3d 815, 834 (9th Cir. 1995).

counsel also failed to follow-up on information that suggested that Daniels suffered from a mental disorder.

An attorney's obligation is to his client. Piers' argument that Butler did not timely move to withdraw confuses the dissatisfaction of his mother who had paid the retainer to Butler with the lack of a clear demand from Piers, himself, that Butler get off the case. Piers now argues that because he was not speaking to Butler at the time, and Butler was certainly on notice that his attorney-client relationship with Piers was "in trouble," that Butler should have earlier filed his motion to withdraw as counsel. The Model Code of Professional Responsibility relied upon by Piers requires a mandatory withdrawal once the client decides to terminate the relationship with his attorney. Granted that a client has a right to discharge his lawyer at any time with or without cause, the facts of this case do not substantiate Piers' claim that Butler waited more than a few days after Piers' request to terminate was submitted to Butler. The record does not support Piers' claim that both he and his mother fired Butler "multiple times" before Butler brought the matter to the court's attention. In light of the Ninth Circuit's ruling, the remaining issue is whether Butler rendered ineffective assistance of counsel in his actual representation of Piers before the trial court. To the extent that Piers argues that *he* was not effectively communicating with his attorney, for example with the failure to locate a potential witness named

3-00-cr-00104-HRH-JDR PIERS 2255 @203 RR Mtn to Vacate.wpd

38

"Adam," Piers still has not provided enough information about Adam that would render Mr. Butler's handling of that matter constitutionally inept.

Judge Holland had before him to consider on Butler's motion to withdraw Piers' letter written the day before trial wherein Piers stated that he did recognize his "forced" counsel. The trial judge considered and rejected Piers' claim that Butler was acting outside his best interests, was not providing legal counsel or answering his questions. Piers has not produced evidence in his motion to vacate that would render the trial judge's rejection of the motion to vacate an abuse of discretion or error of law. As the court of appeals recognized, Piers could have communicated to the court sooner or demanded that Butler get off his case months prior to trial.

Prior to trial Piers presented no evidence that an extensive conflict existed between him and his attorney, Butler. His mother who paid the retainer had no first-hand knowledge of the relationship between Piers and Butler. The record reflects that at trial Butler was prepared and did represent Piers in compliance with the defendant's Sixth Amendment right to counsel. In his direct appeal of this case the Ninth Circuit concluded that there was no evidence of an extensive conflict between Piers and Butler to have warranted the granting of the motion to withdraw by the district court.

Piers argues that it was ineffective counsel for Butler to argue his own motion to withdraw. The motion to withdraw was not based upon a conflict and there was no need to have a different attorney attempt to describe relationship between Mr. Butler and Mr. Piers. There is no allegation that Mr. Piers was not able to speak up for himself before the court in characterizing his attorney-client relationship with Butler. The relationship was not antagonistic or quarrelsome as occurred in <u>United States v. Adelzo-Gonzalez</u>, 268 F.3d 772 (9th Cir. 2001), cited by Piers. Mr. Butler did not abandon his adversarial role in representing Piers at the hearing on the motion to withdraw. When it appeared that the district judge was not inclined to grant the motion, Mr. Butler indicated that he would be prepared to proceed with trial. Piers would place all of the "blame" on his attorney for not bringing the soured relationship to the court sooner. To the contrary, Butler tried to work with his client in his difficult circumstance of facing a long prison sentence. Butler's representation did not fall below an objective standard of reasonableness by not bringing the matter to the court sooner based merely on the dissatisfaction of Piers family with the defense attorney.

### 2.     Failure to Investigate

Piers asserts that a person called "Adam" may well have been the person who entered the credit union and fired the Norinco rifle at the police. He contends that Butler rendered ineffective assistance of counsel by not sufficiently

investigating such a defense.  Piers has not provided information about the full identity of "Adam" although, according to Hubbard, Adam was present when he and Piers discussed the plan to rob the credit union.  The government never located Adam nor did Hubbard provide sufficient information to identify an actual person referred to as "Adam."  Piers appears to be arguing that Butler should have made a more convincing argument to the jury that Adam may have been the person who committed the crimes particularly with respect to the Norinco.  Piers has not identified what beneficial evidence might have turned up with additional investigation into the identity of Adam.  Thus, Piers has not met the prejudice prong of the Strickland test.

The motion to vacate states that Piers repeatedly asked Mr. Butler to investigate the existence and whereabouts of an uncharged member of the conspiracy, known only as "Adam."  Motion to Vacate, Docket No. 203, p.7.  Mr. Piers did not testify at the evidentiary hearing.  From the evidence I am satisfied that Piers asked his attorney to try and identify and locate Adam.  However, I cannot agree that Butler inadequately failed to investigate the claim that an uncharged member of the alleged conspiracy committed the robbery or fired the machine gun.

Piers faults his attorney for not hiring an investigator to attempt to track down the person vaguely described as "Adam."  It is not accurate to say that no investigation was done.  Mr. Butler made inquiry of the government to determine if

they had any information that might identify "Adam." He talked to co-counsel and to his client Mr. Piers. Piers criticizes Mr. Butler for not attempting to interview the co-defendants, themselves. This criticism overlooks the canons of ethics that would prevent an attorney from contacting another criminal defendant who has separate counsel. Mr. Butler did obtain through cross-examination of FBI Agent Lou Ann Henderson at trial some information about a person who could have been the "Adam" referred to by Piers. It was reasonable for Mr. Butler to assume if this "Adam" was implicated in the crime the government was also looking for him prior to the trial.

Agent Henderson testified at the evidentiary hearing on August 16, 2005 that the FBI did in fact look for anyone involved in the bank robbery. The government did look for and locate a third individual who ended up being Donald Douglas Franklin, Jr. This is not a case where a defense attorney undertook no effort to investigate the facts as related by his client. The defense attorney has a duty to undertake reasonable investigations unless a reasonable decision dictates that the particular investigation is unnecessary or has reached a dead end.

The failure to locate "Adam" was not based upon a strategic rationale but rather a practical reality of the facts not producing sufficient leads to require further investigation. It is not a question of whether Mr. Butler could have done more, for example by hiring an investigator to look for "Adam," but whether his

investigative efforts were reasonable under the circumstances.  Piers has not demonstrated prejudice by Mr. Butler's failure to conduct further investigation for "Adam."  Piers has not shown what the investigation might have produced or provided exculpatory evidence for the defendant.  The facts of this case do not merit a finding of ineffective assistance of counsel based on Piers' argument that even if the investigation would have led to a blind alley, this might have been helpful in assisting Piers to confront the difficulties of his defense.  Nor did the lack of further investigation prevent Mr. Butler and Mr. Piers from effectively communicating with each other.

Mr. Butler did not ignore the request to identify Adam, he simply had insufficient information to do so.  Mr. Butler may have misstated the extent of information about Adam when he told the court during the ex parte hearing on Piers's motion to withdraw that the name Adam had "not surfaced" even though Raymond Hubbard was cooperating with the government.  The <u>identity</u> of Adam had not surfaced.  Although Hubbard talked about an Adam, he, too, provided insufficient specificity for the defense or the government to be expected to locate Adam prior to trial.

Hubbard testified at trial that he had met Piers at "Adam's house," and that Adam was one of his friends.  Just because Hubbard implicated a person he called "Adam" as a member of the conspiracy does not inevitably lead to the

conclusion that Adam could have exonerated Piers or enabled him to develop a defense.  Maybe he could and maybe he could not.

Even at this late date Piers has not furnished enough information about the existence of and participation by an individual identified as Adam to expect a reasonably prudent attorney to have undertaken further investigation to locate such potential witness.  Butler testified that despite this inadequate description he went to an apartment complex and tried to find out about a person named "Adam."Piers's argument relies in part about the exchange occurring between Hubbard and Anchorage police Detective Vanderveur on the day of Hubbard's arrest and on Hubbard's testimony at trial.  Assuming arguendo that Adam existed, his role in the bank robbery is purely speculative, particularly with regard to exculpating Piers. Moreover, there is no reason to conclude that any defense attorney would have been able to locate "Adam" based on the minimum description and information provided by Piers at the time.

Piers has not provided the full name for "Adam" nor a residential address to date.  Piers never explained how his attorney should have found "Adam" or what the role of "Adam" actually was in relation to the crimes charged.  On the information provided to Butler, his efforts to locate "Adam" did not fall outside the scope of competent representation.   To establish prejudice, Piers has to demonstrate a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.   Piers has not shown how the absence of "Adam" reasonably affected the outcome of his trial, or how his alleged deficient performance raises sufficient doubt as to the defendant's innocence to undermine confidence in the verdict.

### 3.    Failure to Move to Suppress

Piers contends that Butler rendered ineffective assistance of counsel by failing to move to suppress the use of Piers's post-arrest statement to Officer Bloodgood.  The first statement Piers identifies is one made to Officer Bloodgood after other officers had arrested him.

After Piers was placed in the patrol car officer Matt Bloodgood asked him for his name.  He laughed and said it was "William."  Officer Bloodgood asked him if he knew where the other suspect was and Piers said you already have him – the one with the wet and muddy clothes.  The officer asked Piers for that "suspect's" name and he wouldn't give it. (The officer did not say "accomplice").  Piers then said "Everything is in my name, it's all mine."  Tr. 4-22.   The incriminating response by Piers was not responsive to the question asked by Officer Bloodgood.  Assuming that this statement was elicited during custodial interrogation in violation of <u>Miranda</u>, Piers must now show that the admission of that evidence was prejudicial.  Piers states that the only evidence that he fired the machine gun came through the

testimony of co-conspirator Raymond Hubbard.  Hubbard was apprehended and interrogated apart from any statements attributed to Piers.    Given the other voluntary admissions by Piers and the overwhelming evidence against him at trial, including items independently connected to Piers; he cannot prevail on the prejudicial prong of ineffective assistance of counsel.

The second statement arose in an interview room at the police department on June 27, 2000.  Detective Vanderveur informed Piers that he had already interviewed his "friend" (Raymond Hubbard) and that this could be Piers's only opportunity to present his side of things.  The officer's statement was made before the interrogation began.  Before Detective Vanderveur could proceed with his advisement of rights Piers indicated that he had some things he wanted to say and asked Detective Vanderveur to turn off the recording.  The officer switched off the audio tape but left on the video tape recording.  Piers stated, "I know I already turned myself into a criminal and pretty much disgraced my family.  And I haven't told them yet, but I'd like to do whatever it takes to work things out, but obviously I'm gone for a long time."  *See* Trial Transcript 4-90; Exhibit C (Video - also marked as Exhibit 60 for trial)  Detective Vanderveur then switched the audio tape recorder back on and read Piers his <u>Miranda</u> rights.  Piers immediately requested to see his attorney and the officer terminated the interview.

Piers argues that this scenario constituted an impermissible custodial interrogation. It is not disputed that Piers was in custody for purposes of the <u>Miranda</u> warnings. Piers argues that his attorney should have moved to suppress those statements and should have objected to them when offered at trial. A reasonably prudent attorney might well have concluded, as did Mr. Butler, that Piers's statements to Detective Vanderveur were volunteered not obtained through interrogation. Explaining an interrogation technique to the suspect is not the same as interrogating him. Statements that are not in response to any question but are spontaneous statements are not excluded under <u>Miranda</u>. *See* <u>Oregon v. Elstad</u>, 470 U.S. 298, 312-14 (1985). An attorney does not render ineffective assistance of counsel by failing to make a motion that he reasonably believes to be meritless. <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir.), <u>cert</u>. <u>denied</u> 115 S. Ct. 513 (1994).

Piers has failed to establish how the admission of his post-arrest statements were prejudicial in regard to the outcome of the case. There was substantial direct and circumstantial evidence presented against Piers at trial aside from his statements. Thus, the admission of his statements did not reasonably change the outcome of the trial. In the statements at issue Piers did not admit that he committed the robbery or conspired to commit the robbery.

//

//

### 4.    Testimony About Nearby School and Public Reaction

Piers argues that Butler rendered ineffective assistance of counsel by failing to object to "irrelevant and unfairly prejudicial evidence" as to the reaction of the public to the crime.  The government elicited on direct examination of FBI case agent Lou Ann Henderson testimony about her arrival at the crime scene and the extent of the crime scene during the search for suspects.  SA Henderson testified that motor vehicle traffic was stopped from entering the crime scene area, and the law officers received some public assistance. Trial Transcript 4-64.  SA Henderson testified to the disruption caused to morning commuters, assistance to officers rendered by members of the public, and the police department's concern for the public safety, including a report of suspicious individuals at a nearby elementary school.  Tr. 4-66.

Piers now argues that this line of testimony was unfairly prejudicial and inflammatory because it tended to incite jurors to find Piers guilty because he "jeopardized public safety and children."  Piers assumes without addressing the matter that objecting to this evidence would have been to his benefit.  The disruption to the public and the precipitation of a concern for public safety by the police was caused by the commission of a crime.  The school was near the area where Piers was apprehended.  The issue at trial was whether Piers was one of the perpetrators of the crime(s).

The government was entitled to present the facts and circumstances caused by the criminal conduct and investigations undertaken to apprehend Piers and Hubbard at the crime scene. Agent Henderson's comments at trial were made in general, not directed to Mr. Piers. The comments by Agent Henderson were not offered to inflame the jury, nor in context do they seem to be unfairly prejudicial to Piers. Piers has not shown that the absence of an objection by Butler to these statements by Agent Henderson fell below the level of a reasonably competent attorney.

## 5.    Failure to Seek a Change of Venue

Piers argues that Butler rendered ineffective assistance of counsel by failing to move for a change of venue. As grounds for such a motion Piers relies on the voir dire record that shows that some of the prospective juror pool as well as the jury that was eventually empaneled either personally knew the officers involved, were members of Credit Union 1 (the credit union robbed), or had watched or read parts or all of the extensive media coverage surrounding the robbery, including the names of the suspects apprehended. The voir dire colloquy occurred during jury selection after a pretrial motion for change of venue would have been filed. The issue on a motion for change of venue is whether the defendant can receive a fair and impartial trial in the situs of the trial court where the trial is likely to take place.

Questioning potential jurors and exercising peremptory challenges is an important means of assuring that a fair trial will take place.

Piers has not shown that the court would have granted a motion for change of venue nor has he shown any reasonable probability that the outcome of his trial would have been any different.  A change of venue must be granted when there exists in the community "so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial. . . .  Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." United States v. Collins, 109 F.3d 1413, 1416 (9th Cir. 1997).  The record contains no evidence that Piers did not receive a fair and impartial trial before a fair cross section of the public. There is no evidence in the record that the venire was predisposed to convict him based on anything they knew about the case prior to arriving at the courthouse.  In short, there is no basis for a pretrial motion for change of venue.  The concerns  that particular members of the venire who might be members of Credit Union 1, know someone involved in the case, or be influenced by extensive media coverage are all matters that could have been and were addressed during the selection of the jury. The record reflects that the jury venire had little or no prior knowledge of the case. There is no basis for concluding that Butler rendered ineffective assistance of counsel under Strickland v. Washington, by failing to move for a change of venue.

### 6.     Failure to Make an Opening Statement

Piers argues that Butler rendered ineffective assistance of counsel by failing to make an opening statement.  He argues that this failure was exacerbated by Butler's reserving the right to make an opening statement and then not doing so.

After the government's opening statement, Butler requested that the trial judge inform the jury that the defense was reserving its right to make an opening statement at a later time.  Record Transcript, 1-152.  Piers now complains that the jury had no defense theory to consider as a backdrop in evaluating the government's case-in-chief.  The timing of an opening statement, including whether to make one at all, is a reasonable strategic decision that falls within the discretion of trial counsel and generally does not constitute a basis for a claim of ineffective assistance of counsel.  United States v. Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985); LaGrand v. Stewart, 133 F.3d 1253, (9th Cir. 1998).  Piers has not suggested any plausible theory of what he believes his counsel should have submitted as a theory of defense.  He argues that Butler missed an opportunity to remind the jury about the government's burden of proof.  The jury was adequately advised on the burden of proof.

Piers argues that Butler assured the jury that he would be giving an opening statement. At the beginning of the trial and out of the presence of the jury, the court allocated thirty minutes for Butler to make an opening statement.  Trial

Transcript 1-122.  After Mr. Collins made an opening statement for the government, Mr. Butler advised the court out of the jury's presence that <u>Piers</u> wanted a statement read as an opening.  Tr. 1-148.  Butler told Judge Holland he did not think it was appropriate, that the statement contained information which should not be given to the jury and the court agreed.  Tr. 1-150.  Butler told the judge he would reserve any opening.  Tr. 1-151.  The jury then returned to the court room.  At the close of the government's case-in-chief, the court asked Butler if the defense would be calling any witnesses.  The defense rested.  Tr. 4-114.  There was no "assurance" made to the jury that the defense would make an opening statement.

The defendant has not pointed to anything said in the government's opening statement before evidence was adduced that would have required a reasonably competent attorney to necessarily make an opening statement after the government made theirs.  Mr. Butler chose not to make an opening statement at that time because he did not want to provide the government with a blue print to his defense.   The defendant might have been in a worse position had Mr. Butler described Piers's defense and then changed the defense actually offered.  What an attorney says in an opening or closing statement is not evidence.  Mr. Butler had ample opportunity to argue the defendant's case in his closing summation.  Notably the defendant has provided no case authority holding that an attorney renders ineffective assistance by choosing not to make an opening statement.

### 7.    Failure to Object to Certain Evidence

Butler is alleged to have rendered ineffective assistance by failing to object to the introduction of false CIA identification badges and documents in the names of Piers and Douglas Franklin that were found in Piers's bedroom and on his computer.  At trial Butler indicated that the badges were irrelevant though he did not object to their admission.  Transcript 4-7.  The relevant inquiry is whether that evidence was unfairly prejudicial to Piers.  Piers argued that it created an impression that he had a fixation on secretive, para military-type activities.  It is not at all clear that the evidence would not have been admitted had Butler objected to it.  Butler chose to downplay the existence of the evidence rather than make an issue over it.  No showing a prejudice has been made based on the admissibility of those documents.

### 8.    Testimony of Steven Payne

Butler is alleged to have rendered ineffective assistance of counsel by failing to object to the testimony of Steven Payne, FBI Computer Forensic Expert, that 28 compact disks of data had been taken from Piers's computer.  Piers refers to the court's ruling out of the presence of the jury that the only evidence from his computer that would be admitted was the resumes of Piers and Franklin, the forms and photographs used to create the CIA identification badges, and a portion of a document containing information on obliterating the serial number from a firearm.

Transcript 4-3 to 8.  On direct examination of the computer forensic expert the prosecutor asked Special Agent Payne to identify Exhibit 55A.  Trial Transcript 4-32 Agent Payne indicated that it was one of the CDs that he had created based on the results of the examination of Piers's computer.  The prosecutor asked Agent Payne if that was a portion of the results of the examination of Piers's hard drive that was found in his computer.  Agent Payne indicated that it was but then added:  "This is one of several CDs.  There were – there was so much data involved that it required the creation of approximately 28 CDs to hold all of the information that was seized from the computer evidence."  Trial Transcript 4-32.    The prosecutor clarified by asking if that CD was one of 28.

The court order addressed the content of information on the CDs not the number of CDs.  Piers reads too much into the response of Agent Payne that the CD being introduced was one of 28 CDs.  Piers claims that it raised a negative inference that an enormous amount of incriminating evidence existed that the jury was not seeing.  It is just as reasonable to conclude that only one of 28 CDs had any bearing on the case.  The negative inference suggested by Piers is mere speculation.  No prejudice has been shown as a result of the trial attorney allowing that line of questioning to stand.

//

//

### 9.    Use of Mannequin

At trial the government used a mannequin to display items of evidence. The government introduced several articles of clothing allegedly worn by the robber. These items were not found together.   Piers contends that Butler rendered ineffective assistance of counsel by failing to object to the government's use of the mannequin which displayed the items collectively to the jury as a "single unit."  *See* Record Transcript 4-94.  Mr. Butler made no objection to the use of the mannequin. Piers argues that the failure to object encouraged the jury to draw unfavorable inferences about the state of the evidence and its connection to Mr. Piers that would otherwise not be made.

The government never represented at trial that all the items were found together.  The government did not argue in its summation that these items were found together or that the jury should draw an inference about the evidence by viewing all of the items together.   The evidence connected the apparel to the testimony of an officer as to how he perceived an individual dressed although he did not know the identity of the individual at the time.  The evidence was relevant and not unfairly prejudicial.  No constitutional right to the effective assistance of counsel was denied by the introduction of this evidence without objection.

//

//

### 10.    Cross-Examination of Officer Reeder

Piers contends that Butler incompetently cross-examined Anchorage Police Officer Dan Reeder as to the machine gun evidence.  Officer Reeder testified that he believed the person who fired the assault weapon at his patrol car had a goatee and was wearing a faded Carhartt jacket.  Transcript 3-58, 60.  Piers argues that this description fit that of Raymond Hubbard not him.   Mr. Butler elicited testimony from Officer Reeder that he never actually saw the person who fired at his patrol car.  Transcript 3-60.  Co-defendant Hubbard identified Piers as the shooter.

Piers uses hindsight to second guess the question asked of Officer Reeder.  On its face it was reasonable to question whether the officer got a good look at the person he was describing as the possible shooter.   Reeder testified after Hubbard.  Piers uses hindsight to argue that his attorney should not have challenged the reliability of the officer's testimony to undermine the government's case.  United States v. Villalpando, 259 F.3d 934 (8th Cir. 2001), cited by Piers, is readily distinguishable.   In Villalpando, the defense attorney elicited testimony of the defendant's violent nature.   The appellate court held that in the drug-related prosecution no competent trial attorney would have elicited testimony from a government's witness on cross-examination that the defendant made threats to her and told her that the defendant had ordered a murder.  259 F.3d at 939.  The

challenged examination of Officer Reeder did not fall below the standard of a reasonable competent attorney. Thus, the first prong of <u>Strickland</u> is not met.

### 11.    Cross-Examination of Robert Shem

Piers argues that Butler should have cross-examined forensic expert Robert Shem on whether the Norinco assault rifle was an automatic or a semi-automatic rifle.  Mr. Shem examined the Norinco assault rifle used in the robbery. According to his testimony the rifle was originally semi-automatic which had been modified to allow the user to fire the weapon either as a semi-automatic or an automatic.  Transcript 3-79.

Piers argues that his attorney should have asked questions during cross-examination of Mr. Shem regarding whether the rifle, as fired, was an automatic or a semi-automatic.  Since Mr. Shem would have been uncertain about whether the rifle was fired as an automatic or semi-automatic, Piers argues, this would have cast uncertainty as to whether the shooter was aware that the rifle was capable of firing as an automatic.  Piers offers a faulty premise.  Just because a forensic expert cannot tell whether the rifle was fired as an automatic or semi-automatic, assuming that to be the case, it is a different question to ask whether the shooter would have been aware that the rifle was capable of firing as an automatic. Whether the rifle was fired intentionally as an automatic or not would have had little

bearing on the guilt or innocence of Piers as the person allegedly pulling the trigger. Thus, there was no ineffective assistance of counsel.

### 12.    Jury Instruction about Weapon

Mr. Butler is alleged to have rendered ineffective counsel because he did not request a jury instruction that required the jury to find beyond a reasonable doubt that Piers knew the modified Norinco weapon could be operated as an automatic. Count 5 charged Piers with using, carrying or possessing a machine gun during or in furtherance of a crime of violence. The firearm at issue was a modified semi-automatic Norinco assault rifle, capable of being fired either as a semi-automatic or as a fully automatic weapon. In the direct appeal before the Ninth Circuit the appellate court found that the evidence was sufficient to support the jury's finding that the Norinco was capable of being fired as a semi-automatic as well as a fully automatic weapon.

The underlying factual issue at trial was whether Piers was the person who used the Norinco during the robbery. If he was not, then it did not matter whether Piers knew whether the weapon was capable of being operated as an automatic. Rather than arguing that the manner in which Mr. Butler defended Piers as to Count 5 constituted ineffective assistance of counsel, the defendant claims he received ineffective counsel because of the absence of counsel's request for a jury instruction that even if the jury found Mr. Piers fired the weapon they must find

beyond a reasonable doubt that Piers knew it was being operated in the automatic mode. Defendant's Post-evidentiary Argument, p.52. Piers has not shown how the outcome of his trial or his appeal would have been different had Mr. Butler chosen to focus on the knowledge Mr. Piers had of the Norinco assault rifle rather than denying that the gun was operated by Mr. Piers.

Piers cites Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793 (1994) holding that "a defendant cannot be convicted of unlawful possession of a machine gun, 26 U.S.C. § 5861, unless the government has proven knowledge of the weapon's capacity to function as a machine gun." Doc. 249, p.52. The Ninth Circuit agreed that the modified Norinco's capacity to function as an automatic was proven at trial. Knowledge that a firearm can function as an automatic rifle for purposes of sentencing may be proved by circumstantial evidence. The sentencing judge heard the trial testimony. There was no ineffective assistance of counsel.

In closing, the prosecutor told the jury that Piers was not charged with unlawfully having a machine gun that is not registered; the jury was told that Count 5 addresses the use or carrying a machine gun during a crime of violence. The jury was told they would have to find that Piers possessed the machine gun in furtherance of the armed credit union robbery.

In his summation Mr. Butler told the jury that the defendant contested the allegations that he entered the credit union and the van and shot at the officer.

Mr. Butler argued that the gun parts could just as likely have belonged to Franklin who lived with Piers for a period of time. Mr. Butler pointed out that Hubbard admitted that his fingerprints would be on the firearm. Mr. Butler challenged the jury to determine who owned the Norinco, who possessed it, and who fired it. He argued that they could not convict Piers without believing Raymond Hubbard, who had a motive to fabricate.

The court's jury instructions as to explained that Piers was charged in Count 5 with using, carrying, or possessing a machine gun during and in relation to or in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). The jury was instructed that in order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: (1) the crime of armed credit union robbery, as charged in Count 2 of the indictment, occurred. (2) The defendant knowingly used or carried a machine gun during and in relation to the crime charged in Count 2; or knowingly possessed a machine gun in furtherance of the crime charged in Count 2, with all of [the jury] agreeing as to which alternative has been proved. The jury instructions defined the term "machine gun," and the word "used" with reference to the machine gun. The instruction defined the terms "carries a machine gun" and "in relation to the crime."

In Staples, *supra*, the defendant was convicted of possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d). The Supreme Court

held that the government should have been required to prove beyond a reasonable doubt that the defendant knew the weapon he possessed had characteristics that brought it within the statutory definition of a machine gun. Staples testified at trial that he was ignorant of any automatic firing capability of the weapon.

Count 4 of the indictment charged Piers with using, carrying, or possessing a Norinco, a semi-automatic assault weapon, during and in relation to or in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). In his jury instructions, Judge Holland instructed the jury that in order for Piers to be found guilty of that charge, the government must prove beyond a reasonable doubt the following elements: (1) the defendant committed the crime of armed credit union robbery as charged in Count 2 of the indictment. (2) The defendant knowingly used or carried a semi-automatic assault weapon during and in relation to the crime charged in Count 2, or knowingly possessed a semi-automatic assault weapon in furtherance of the crime charged in Count 2, with all of the jury agreeing as to which alternative had been proved. *See*, Trial Tr. 5-73-74. The jury instructions did not violate Staples.

### 13. Character Witnesses

Piers contends that his attorney should have called character witnesses to testify on behalf of his good character, honesty, and history of law abiding behavior. Piers claims that he had repeatedly asked Butler to put on character

witnesses but this contention is unsupported in the evidence. It is not disputed that the defense attorney did not call a single character witness. Mr. Butler explained at the evidentiary hearing that he was concerned that doing so would open up new issues that might be more favorable to the government than to the defense.

The character witnesses would have testified that they knew Piers to be a law abiding citizen and a person unlikely to shoot a gun at a policeman. Piers correctly states the law that a good character may be sufficient standing alone to create a reasonable doubt of guilt. *See* Michelson v. United States, 335 U.S. 469, 476 (1948); Weedin v. United States, 380 F.2d 657, 660 (9th Cir. 1967). However, a reasonably competent attorney would weigh the risk that character evidence could open the door to prejudicial evidence overriding the benefit of such evidence. Based on his testimony at the evidentiary hearing, I conclude Mr. Butler considered the character evidence but for strategic reasons decided not to employ it. In light of the evidence of Piers's guilt offered at trial, it is most unlikely that evidence of good character would have been sufficient to establish a reasonable doubt that Piers committed the crime(s) as charged. There was no ineffective assistance of counsel.

### 14.    Defendant not Testifying

Mr. Piers claims that he had a strong desire to testify but his attorney Mr. Butler "refused" to allow him to testify in his own defense. Motion to Vacate, Docket No. 203, p.16. Piers has offered no evidence either through his own

testimony at the evidentiary hearing or through examination of Mr. Butler to support

this allegation.  Mr. Piers may have had a "strong desire" to testify but there is no

evidence to indicate that he expressed that desire to his attorney who then "refused"

to allow him to testify in his own defense.

Frequently one of the strategic decisions made at trial is whether the

defendant should testify in his own behalf.  There is no reason to believe that Mr.

Piers did not acquiesce in his attorney's decision whether or not to call him as a

witness.  "When a defendant is silent in the face of his attorney's decision not to call

him as a witness, he has waived his right to testify."  United States v. Nohara, 3 F.3d

1239, 1244 (9th Cir. 1993).

Mr. Piers did not claim that he did not know of his right to testify at trial.

Additionally, Piers has not indicated what he would have said in this testimony or

how that might have affected the outcome of his trial.  The government points out

that Piers would have had a hard time denying his association with Franklin, the

former credit union employee, his possession of the plan to rob the credit union on

his computer, his being clothed as the robber, the discovery of both his handgun and

the Norinco parts in his room that matched the full automatic Norinco seized at the

crime scene, and his arrest in the swamp near the scene where the robbers hid the

second get away vehicle.

//

### 15.    Voice Evidence

Mr. Piers faults his attorney for not offering evidence at trial of his distinctive voice to permit the victim tellers to compare it to that of the robber.  This allegation is short on logic.  How would Mr. Piers duplicate the sound of his voice that might have been made if he were the robber and how would his attorney have established a foundation that a particular victim teller had a recollection of the robber's voice sufficient to compare that with the defendant's?  Such evidence could easily have backfired and been more damaging to Piers than to the government's case.  Suppose the victim teller were to have concluded that it sounded like Mr. Piers's voice but he could not be sure?  The suggestion of error in this regard is highly speculative and without legal foundation to place it in the category of constitutionally ineffective assistance of counsel.

### 16.    Jury Instruction Re: Witness's Believability

At trial Mr. Butler expressed his desire to have the jury instructed in light of Hubbard's plea agreement to view Hubbard's testimony "with distrust."  The jury was instructed that such testimony should be considered "with great caution."  Piers argues that if the jury had been instructed to view Hubbard's testimony "with distrust," rather than with great caution the jury might have acquitted him on some or all counts.

The record indicates that Mr. Butler adequately argued to the jury that they should reject Hubbard's testimony in so far as it sought to place blame on Piers rather Hubbard.  The failure to argue for Mr. Piers's "now favored language" do not constitute a failure to advocate on behalf of the defendant. Butler did initially request it so there was no ineffective assistance of counsel. The district court gave the relevant instruction from the 2000 Edition of The Ninth Circuit Model Jury Instructions, No. 4.12.  Tr. 5-4.

### 17.    Motion for  Judgment of Acquittal

Piers argues that Mr. Butler should have moved for a judgment of acquittal under Federal Criminal Rule 29 on the issue of whether there was sufficient evidence to show that Mr. Piers, rather than Raymond Hubbard, fired the Norinco assault rifle.   In making this argument Piers contends that Butler "completely nullified" Officer Reeder's testimony that Hubbard, not Piers was the shooter. Whether or not Mr. Butler should have moved for a judgment of acquittal must be viewed in terms of the evidence before the trial court.  The evidence presented was sufficient to support a jury's finding that Piers was the one who used the Norinco assault rifle during the robbery.   Thus, viewing the evidence in the light most favorable to the government the trial court would not likely have granted a Rule 29 motion.  Therefore, the second prong of <u>Strickland</u> - prejudice - was not met.

//

### 18.    Overall Defense Strategy

Piers contends that Mr. Butler failed to develop a coherent theory of defense.  He argues that this court should reject Butler's claim that he ever had a theory in mind.  Piers acknowledges that Mr. Butler made some attempt to refute or explain the circumstantial physical evidence against Piers and attempted to discredit the testimony of government witness, Raymond Hubbard.  Piers faults his trial attorney for not calling the jury's attention to Agent Henderson's testimony that she "always assume[s]" that co-conspirators are not telling the truth.  Piers was also an alleged co-conspirator.  Mr. Piers faults his attorney for not calling the jury's attention at closing to the forwarding address left by co-conspirator Franklin because arguably it could have lent credence to an argument that Mr. Franklin had access to the Nelchina Street residence where evidence was found.  That address was Piers' family's address and would have implicated Mr. Piers as well.

Mr. Hubbard testified that he drove the getaway minivan.  Mr. Piers suggests that Butler should have argued that Hubbard while driving, not Piers, fired the machine gun because forensics expert Shem testified that the machine gun could have been fired with one hand.  The constitutional standard does not require an attorney to make every conceivable argument to the jury, particularly when under the facts that argument seems far-fetched.  Mr. Shem testified that when the Norinco firearm is discharged with the stock extended it has a pivot that causes the weapon

to start going up when fired. There were no bullet holes in the roof of the van, but there were bullet holes through the back of the van. Evidence found in Mr. Piers' home related to the serial number 21112 that was partially obliterated on the Norinco rifle itself. The rifle was found in Mr. Piers' bedroom. Other items found in Piers' residence fit within the assault rifle, including boxes of bullets. The evidence included casings from the van that bore identical markings as those Mr. Shem identified when he placed the same bullets from Piers' home into the weapon and fired them. Mr. Butler's summation adequately assisted the jury in analyzing the evidence although he could have developed his theory of defense better. Although Mr. Butler was tired from staying up late "thinking the case through" (Tr.5-41 to 42), as he told the jury, this does not mean he was "too exhausted," as Piers argues, to render competent counsel.

Piers faults Mr. Butler for conceding guilt on the conspiracy counts. Mr. Butler did not concede the defendant's guilt to all conspiracy counts. The attorney attempted to maintain credibility in the jury's eyes while trying to shift their focus from the other more serious charges. Piers essentially argues that because Mr. Butler did not argue sufficiently as to the new conspiracy counts, his strategy to concede guilt as to conspiracy was prejudicial under Strickland, *supra*. The test is not whether such a strategy was successful but whether it falls within the realm of competent representation. Mr. Butler's closing arguments to the jury denied 6 of the 7 charges

against Piers and the government's case.  The jury acquitted Piers of the October

1999 attempt to rob the credit union.  That charge depended in part upon Hubbard's

testimony.

United States v. Swanson, 943 F.2d 1070 (9th Cir. 1991), cited by Piers

is not as broad sweeping as Mr. Piers advocates.  Swanson relies on United States

v. Cronic, 466 U.S. 648 (1984) wherein counsel conceded guilt on the sole factual

dispute before the jury.   The holding in Swanson is inapplicable because Piers was

charged with more than one offense and the strategy for a defense in the instant

case was an effort to appeal to the jury to acquit him on one or more charges in the

face of overwhelming evidence that he, Piers, had been involved in the criminal

undertaking.  Arguments which are manifestly designed to bolster credibility with the

jury may be part of a reasonable strategy of arguing that the defendant operated

independently of some of the charges he faces.   Mr. Butler did not perform

deficiently in engaging in a "confess and avoidance" tactic in the instant case.

Compare United States v. Fredman, 390 F.3d 1153 (9th Cir. 2004)(counsel

admission during open statement in drug conspiracy prosecution that defendant was

a "meth cook" and that he had been recently convicted in another state of drug

crimes but argued to disassociate the defendant from a particular conspiracy for

which he was being prosecuted did not provide ineffective assistance).

Piers has not shown that his attorney made errors so serious that his counsel did not function as the counsel guaranteed to him by the Sixth Amendment. The Supreme Court has recognized that an attorney may constitutionally acknowledge before the jury his client's short comings in order to build credibility with the jury and persuade it to focus it on all the relevant issues in the case. *See* Yarborough v. Gentry, 540 U.S. 1, 11 (2003). In Fredman the court recognized that by making concessions an attorney shows that he is earnestly seeking the truth and his comments on other matters in dispute will be received without the usual apparition surrounding the remarks of an advocate. Such strategy is the sort of calculated risk "that lies at the heart of an advocate's discretion." Gentry, 540 U.S. at 9.

### Conclusion

Piers has not met the Strickland test of ineffective assistance of counsel as to any of his claims against his trial or appellate counsel. **For the foregoing reasons the Motion to Vacate should be denied. IT IS SO RECOMMENDED.**

DATED this 10th day of April, 2006, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Wednesday, April 26, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON, Wednesday, May 3, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).