MICHAEL R. LEVINE, Oregon State Bar No. 93142 (admitted *pro hac vice*)
MATTHEW G. MCHENRY, Oregon State Bar No. 04357
Attorneys At Law
400 SW Sixth Avenue, Suite 600
Portland, Oregon 97204
Phone:  (503) 546-3927
Fax:    (503) 224-3203
Email:  MichaelLevineESQ@aol.com



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br><br>WILLIAM PIERS,<br>　　　　Defendant. | CASE A00-0104 CR (HRH)<br><br>DEFENDANT'S OBJECTIONS TO<br>MAGISTRATE JUDGE ROBERT'S<br>RECOMMENDATION REGARDING<br>MOTION TO VACATE |

The defendant, William Piers, through his attorneys, Michael R. Levine and Matthew G. McHenry, submits the following objections to Magistrate Judge Roberts's Recommendation Regarding Mr. Piers's Motion to Vacate his convictions and sentence (Recommendation).[1]

Mr. Piers moves the District Court, the Honorable Russel Holland, to make a *de novo* determination of each contested finding, as the law requires. Rules Governing § 2255 Proceedings, Rule 8(b); 28 U.S.C. § 636(b)(1); *Orand v. United States*, 602 F.2d 207, 208–09 (9th Cir. 1979). In short, Mr. Piers objects to every adverse material factual finding and legal conclusion in the Recommendation. Specific written objections follow.

---

[1] Though counsel has made every effort to limit the length of these objections, they exceed the 5-page limit imposed by the Court. As such, Mr. Piers has filed, contemporaneously with these objections, a Motion to Allow Written Objections to Exceed Five Pages.

## I. Procedural Objections

| Procedural Ruling | Objection and Explanation |
|---|---|
| 1. At the August 2005 evidentiary hearing on the 2255 Motion, the Court did not permit Mr. Piers to present testimony of an expert, Richard Ney, on the subject of the reasonable standard of care for a criminal defense attorney. Evid. Hrg. 270–74.[2] | Mr. Ney would have addressed the performance prong of the *Strickland* ineffective assistance standard. Evid Hrg. 244–56 (proffer of expected testimony of Mr. Ney); *id.* at 275–77 (Mr. Ney's qualificiations). Judge Roberts concluded that such testimony would invade the province of the court and that admitting it would be "time consuming." *Id.* at 274. Such testimony is routinely admitted in post-conviction proceedings. *E.g. Ainsworth v. Calderon*, 138 F.3d 787, 791 (9th Cir. 1998). Expert testimony would not invade the province of the Court, just as expert testimony in a jury trial does not invade the province of the jury. *See United States v. Bighead*, 128 F.3d 1329, 1330–31 (9th Cir. 1997). Refusing to admit the testimony—particularly when the reason was in part to save time—violated Mr. Piers's due process right to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This was an abuse of discretion, given the Court's apparent misunderstanding of the minimum standards of care for criminal defense attorneys (see below). |

---

[2] For purposes of this pleading, citations to the transcript of the February 2001 trial are denoted as "Trial." Citations to the transcript of the January 2001 ex parte hearing on the Motion to Withdraw are denoted as "Ex Parte." Citations to the transcript of the August 2005 evidentiary hearing are denoted as "Evid. Hrg." Citations to Mr. Piers's Motion to Vacate Convictions and Sentences Pursuant to 28 U.S.C. § 2255 are denoted as "2255 Motion." Citations to Mr. Piers's Reply to Government's Opposition to the 2255 Motion (Docket No. 216) are denoted as "Reply." Citations to Mr. Piers's Post-Evidentiary Hearing Argument in Support of the 2255 Motion (Docket No. 247) are denoted as "Post Hrg. Arg." Citations to Mr. Piers's Reply to Government's Post-Evidentiary Hearing Written Summation in Opposition (Docket No. 252) are denoted as "Post. Hrg. Reply." Citations to Judge Roberts's Recommendation Regarding Motion to Vacate are denoted as "Rec."

2

| Procedural Ruling | Objection and Explanation |
|---|---|
| 2. Judge Roberts did not recuse himself after issuing a premature recommendation. | On October 24, 2005, before the parties had an opportunity to present arguments under the briefing schedule set at the August 2005 evidentiary hearing (Evid. Hrg. 281–84), Judge Roberts filed a 50-page recommendation to deny the 2255 motion (Docket No. 244). This recommendation was withdrawn upon defense motion, and Mr. Piers moved Judge Roberts to recuse himself, arguing that by prematurely making his decision without the benefit of argument, to remain on the case would compromise the appearance of impartiality. The motion was denied.[3] The denial of the Motion to Recuse was an abuse of discretion, made clear by the fact that nearly the entire 50-page premature recommendation is included verbatim in Judge Roberts's latest 70-page recommendation, including even the incorrect Docket Number (203) that was associated with the premature recommendation. Rec. 1. |

## II. Objections To Factual Findings

| Magistrate Finding | Correct Finding |
|---|---|
| 1. Mary Hutchison's testimony did not indicate when she fired Rex Butler. Rec. 9 | Ms. Hutchison testified that she fired Mr. Butler at least as early as November of 2000, or three months prior to the trial, and also voiced her unhappiness with Butler "many, many times." Evid. Hrg. 238. On page 33 of the Recommendation, Judge Roberts notes that Ms. Hutchison fired Mr. Butler in November of 2000, thus contradicting the statement on page 9 of the Recommendation. |

---

[3] For reasons not known to undersigned counsel, Mr. Piers's Motion to Recuse and Judge Roberts's order denying said motion are missing from the docket for Mr. Piers's case.

3

| Magistrate Finding | Correct Finding |
|---|---|
| 2. Rex Butler did not contact the available character witnesses for strategic reasons, because he decided not to place Mr. Piers's character at issue. Rec. 10, 62. | Mr. Butler offered no reason why he did not contact any of the character witnesses. Butler did not recall receiving the list of character witnesses from Ms. Hutchison, nor did he recall any of the character reference letters that were recovered from his file by undersigned counsel. Evid. Hrg. 112, 115. Reply Exhibit H. *See also* Post. Hrg. Arg. 38–40. Butler testified that he would not have contacted character witnesses *if* he had decided not to open up Mr. Piers's character. *Id.* at 118. He gave no testimony whatsoever about why he did not call character witnesses at Mr. Piers's trial specifically. |
| 3. Mr. Butler met with Mr. Piers more than three times prior to trial. Rec. 11. | Butler testified that "it might well be" that he and Mr. Piers were not speaking at the time of trial, and also testified that Mr. Piers refused to see him. Evid. Hrg. 24, 27. Butler had no independent recollection of ever visiting Mr. Piers. *Id.* at 162. |
| 4. Mr. Butler did not have enough information or description of Adam to locate him. Rec. 11. There was no information about Adam that would have helped law enforcement trace his whereabouts. *Id.* at 13. Mr. Hubbard provided insufficient information for the defense or the government to find Adam. *Id.* at 41, 43. The failure to locate Adam was because there was not sufficient information to "require further investigation." *Id.* at 42. | Through trial testimony of Agent Henderson and the statement of Raymond Hubbard, which Mr. Butler had prior to trial, Butler had more than enough information for a competent investigator to locate Adam, had Butler hired one. Post. Hrg. Arg. 11–12; Post. Hrg. Reply 9–10; Evid. Hrg. 33–37, 137–40, 222–23; Trial 2-5, 2-19–20, 4-99–100, 4-137–140. *See also Statement of Raymond Hubbard*, 8–9 (Evidentiary Hearing Exhibit A); Reply Exhibit D (October 18, 2000 Grand Jury Testimony of Raymond Hubbard), at 11–13, 16–17. Instead, he relied on the government's investigation. Evid. Hrg. 140–41. Part of the reason Butler did not seek Adam was that he simply did not believe Adam existed. *Id.* at 29. The government stopped looking for Adam once they identified Douglas Franklin. *Id.* at 220. |

4

| Magistrate Finding | Correct Finding |
|---|---|
| 5. Mr. Butler chose not to give an opening statement because he did not want to give away, or provide a "blueprint" of, the defense. Rec. 12, 52. | Butler did not recall not giving an opening statement, or what his reasoning was. He testified that "sometimes" he does not give an opening so as not to give away the defense, but said nothing to that effect with respect to Mr. Piers's case specifically. Evid. Hrg. at 72–74. |
| 6. Mr. Butler thought the CIA badges introduced at trial were innocuous, and chose to "downplay" their existence. Rec. 12, 53. | Butler did not recall the CIA badges or what he thought of them. Evid. Hrg. 76. He testified that he "*probably* thought they were innocuous at best." *Id.* at 78. He never testified that he chose to "downplay" them. |
| 7. Mr. Butler "successfully object[ed]" to an attempt by the government to introduce evidence seized from Mr. Piers's computer, including an "anarchist hand book." Rec. 12. | Butler did not object at all, successfully or otherwise, nor did the government attempt to introduce such evidence. In fact, it was the *government's* suggestion to keep out portions of the "Anarchist's Cookbook" to which the Court refers. Trial 4-3 to 4-7. |
| 8. It is not evident from the video whether Mr. Piers knew he was being videotaped. Rec. 12. | Mr. Piers asked the officers to switch off the recording device. Evidentiary Hearing Defense Exhibit C. If he knew he was still being videotaped, he would have requested that the video be turned off as well. |
| 9. Mr. Butler considered the videotape different from *Rhode Island v. Innis* because of the "interplay of the officer wanting to read the *Miranda* warnings to Piers." Rec. 13. | Mr. Butler testified that he thought the *Innis* doctrine only applies if officers at some point begin direct questioning. Evid. Hrg. 83–90, 86. This is incorrect. Post. Hrg. Arg. 19–26, Post. Hrg. Reply 16–17. Butler also testified that in his mind, to file a motion based on *Miranda*, "your client's got to testify," which is also incorrect. Evid. Hrg. 63. Butler also assumed that *Miranda* warnings had been given earlier because Mr. Piers supposedly knew the warnings by heart. *Id.* at 85. Butler agreed that if there were any grounds to suppress the statement, he should have moved to do so. *Id.* at 67. |
| 10. When Raymond Hubbard was arrested he stated that Adam's name was "Jonathan Cutty." Rec. 13. | Mr. Hubbard stated initially that *his own* name was Jonathan Cutty. Trial 226. Hubbard was always consistent in describing Adam. |

5

| Magistrate Finding | Correct Finding |
|---|---|
| 11. Mr. Butler "point[ed] out" that FBI computer forensics expert Steven Payne did not state that the government took 28 CDs of "bad information" from the computer. Rec. 15. | Butler *asked* whether Mr. Payne said that. Evid. Hrg. 93. Mr. Payne's trial testimony was that there was 28 CDs worth of "computer evidence" seized. Trial 4-32. To a jury, the term "evidence" suggests incriminating information. |
| 12. Mr. Butler explained that his strategy regarding the information from Mr. Piers's computer was that he didn't want to highlight the information found on the computer. Rec. 15. | Butler testified that he had no recollection whatsoever of his thinking: "I'm not sure now what my thinking may have been at the time, but hopefully it won't come back and bite you." Evid. Hrg. 94. He offered no explanation or strategy. Butler acknowledged that objections could have been made outside the presence of the jury, and thus he would not have risked "highlighting" the information. *Id.* |
| 13. Mr. Butler explained that he did not think objecting to the use of a mannequin would have aided in the jury's assessment, and was unsure whether the mannequin misrepresented facts. Butler concluded that use of the mannequin was not more prejudicial than probative under Rule 403. Rec. 15–16. | Butler testified that he did not even remember the mannequin. Evid. Hrg. 95. He offered no explanation as to why he did not object. He further testified that, at the time of the evidentiary hearing, he was "not sure" if it was more prejudicial than probative, and that he didn't remember "specifically what [his] mindset was at that time." *Id.* at 96–97. |
| 14. Mr. Butler did not raise the issue of fingerprints in his closing argument because he wanted to focus the jury on the main points of his argument. Rec. 16–17. | At the evidentiary hearing, Butler offered no explanation as to why he did not raise this or several other arguments in closing that would have supported his purported theory. *See* Post Hrg. Arg. at 45–52. Butler speculated as to possible reasons, but did not speak with specificity to Mr. Piers's case. The only concrete explanation offered by Butler for not raising several points in closing argument was that he assumed the jury heard the evidence and thus there was no need to remind them of it in closing. *E.g.* Evid. Hrg. 135–36, 137, 147, 153. *See also* Post Hrg. Arg. 45–52. |

6

| Magistrate Finding | Correct Finding |
|---|---|
| 15. There is no evidence of any bad language being exchanged between Mr. Butler and his client. Rec. 24. The relationship between Mr. Butler and Mr. Piers was not antagonistic or quarrelsome. Rec. 40. | The record is rife with evidence of the contentiousness of the relationship, and displays bad language as well as antagonistic and quarrelsome relations. 2255 Motion 4–8; Reply 6–9; Post Hrg. Arg. 4–9; Post Hrg. Reply 6–9. *See also* transcript of the Ex Parte hearing on the Motion to Withdraw; 2255 Motion Exhibit B (letter from Mr. Piers to the Court). The Recommendation itself notes that Butler told the Court that Mr. Piers was lying, and that Piers levied "strong accusations" against Mr. Butler. Rec. at 27. |
| 16. Mr. Butler consulted with Mr. Piers prior to conceding his guilt in closing arguments. Rec. 25. | There is no evidence that Butler consulted with Piers prior to conceding guilt. Butler had no recollection of discussing his plan to concede guilt with Mr. Piers. Evid. Hrg. 125. He also testified that it was the attorney's decision, and implied that even if the client instructed him not to do so, he would do so anyway. *Id.* at 125–127. All other evidence suggested that during the trial Mr. Butler and Mr. Piers were not even speaking to each other. Post Hrg. Reply 4–5. |
| 17. Mr. Piers was not denied any knowledge or information about Mr. Hubbard's reference to Adam prior to trial. Rec. 28-29. | Mr. Butler represented to the Court in the Ex Parte hearing on the Motion to Withdraw that the government had assured him that the name "Adam" had never "surfaced" in their investigation. Ex Parte 7. *See also* 2255 Motion 7; Reply 65. Butler testified that he "had no information about Adam," though he specifically inquired of the government about Adam. Evid. Hrg. 33. This is so despite Hubbard's repeated references to Adam during his statement to police and his Grand Jury testimony. *Statement of Raymond Hubbard*, 8–9 (Evidentiary Hearing Exhibit A); Reply Exhibit D (October 18, 2000 Grand Jury Testimony of Raymond Hubbard) at 11–13, 16–17; Trial 2-5, 2-19–20 (testimony of Raymond Hubbard). FBI Agent Henderson also testified that prior to trial the government was looking for an individual named Adam, based on statements made by Hubbard. Trial 4-99–100, 4-137–40; Evid. Hrg. 222–23 (testimony of Lou Ann Henderson). |

7

| Magistrate Finding | Correct Finding |
|---|---|
| 18. Mr. Butler and Mr. Piers had "several discussions about [Butler] getting off the case before he formally filed a motion." Rec. 33. | These were not discussions, but rather clear demands from Mr. Piers to get off the case. Evid. Hrg. 18–19. Mr. Butler simply refused to do so. *Id.* at 19–20, 22, 23. *See* Post Hrg. Arg. 1–6. |
| 19. Mr. Butler explained at the evidentiary hearing why he did not move to withdraw at the first request of Mr. Piers's family. Rec. 34. | Butler's explanation—that his practice is to continue representing clients even after they fire him—is a violation of ABA standards. Post Hrg. Arg. 1–6. Butler admitted that Piers fired him "several times" "well before" trial. Evid. Hrg. 18–19. |
| 20. There is no proof that Mr. Piers fired Mr. Butler as of a certain date. Rec. 34. There was no "clear demand" from Piers that Butler get off the case. *Id.* at 38. The record does not support the claim that both Mr. Piers and his mother fired Mr. Butler "multiple times" before Butler brought it to the Court's attention. *Id.* Mr. Piers could have demanded that Butler get off his case months prior to trial. *Id.* at 39. | Butler testified that Piers told him to get off the case "several times" "well before trial." Evid. Hrg. 18–19. Mary Hutchison testified that she fired Mr. Butler at least as early as November of 2000, or three months prior to the trial, and also voiced her unhappiness with Butler "many, many times." *Id.* at 238. This undisputed and uncontroverted testimony shows a "clear demand" from both Mr. Piers and his mother. Butler said it is not his practice to move to be relieved when a client fires him. *Id.* at 19–20, 22, 23. Post Hrg. Arg. 1–6. |
| 21. Butler made an adequate effort to inform the court in a timely manner about the breakdown of the attorney-client relationship after making a reasonable effort to try to work with Piers. Rec. 34. | Butler waited until only 6 days before trial to inform the court of the issue, though Butler admitted that Mr. Piers Piers told him "several times" "well before trial" to get off the case. Evid. Hrg. 18–19. This is not "timely." The Recommendation itself labels the filing of the motion to withdraw as "late." Rec. 34. Butler's role as counsel does not include continuing to work for Mr. Piers in the face of Mr. Piers firing him repeatedly, as Butler testified. *Id.* at 18–20. *See also* Post Hrg. Arg. 1–6. |
| 22. Butler was communicating effectively with his client and was not prevented from, among other things, submitting motions on his behalf. Rec. 34. | All evidence suggests that Butler was *not* communicating effectively with Mr. Piers. Post Hrg. Arg. 4–6. *See also* 2255 Motion Exhibit B (letter from Mr. Piers to the Court). The only pretrial motion Butler filed was an unsuccessful motion to sever. |

8

| Magistrate Finding | Correct Finding |
|---|---|
| 23. The Motion to Withdraw was not based upon a conflict (thus there was no reason for another attorney to argue the motion to withdraw). Rec. 40. | As noted by the Ninth Circuit, Mr. Butler wrote that "his motion [to withdraw was] based on 'the break down in attorney client communications.'" *United States v. Franklin*, 321 F.3d 1231, 1237 (9th Cir. 2003). For evidence of the extensive conflict between Butler and Piers, *see* 2255 Motion 4–8; Reply 6–9; Post Hrg. Arg. 4–9; Post Hrg. Reply 6–9. |
| 24. Mr. Butler "did not abandon his adversarial [sic] role in representing Piers at the hearing on the Motion to Withdraw." Rec. 40. | Presumably the Court intended to say Butler did not abandon his *advocacy* role in representing Piers at the hearing. However, during the hearing Mr. Butler *never* argued that the motion should be granted, and in fact assumed an adversarial role against his client. *See* transcript of Ex Parte Hearing. *See also* 2255 Motion 4–6; Reply 8–9; Post Hrg. Arg. 6–8. This is despite having been fired by Mr. Piers "many times" "well before trial." Evid. Hrg. 18–19. |
| 25. It is not accurate to say that no investigation was done. Mr. Butler did not fail to investigate Adam. Rec. 41. | There is no evidence whatsoever of any independent investigation done by Butler. Butler testified that he did not recall hiring an investigator. Evid. Hrg. 13, 46. Butler could not recall a single act of investigation he performed. *Id.* at 46–55. *See also* Post Hrg. Arg. 9–16. Butler's case file contained no memorandum, receipts, or notes regarding any investigation. Evid. Hrg. 235. Butler did no independent investigation, instead relying on the government's investigation, which falls below an objective standard of reasonableness for a defense attorney. Evid. Hrg. 140–41. Post Hrg. Arg. 12–16. |
| 26. Criticizing Mr. Butler for not interviewing Mr. Piers's co-defendants "overlooks the canons of ethics what would prevent an attorney from contacting another criminal defendant who has separate counsel." Rec. 42. | Mr. Butler could have contacted the co-defendant's attorneys and requested interviews. This routine practice would not have violated any ethical canons. |
| 27. The "lack of further investigation" did not prevent Mr. Butler and Mr. Piers from communicating. Rec. 43. | Butler's idleness only increased Piers's lack of confidence in him. *See, e.g.*, 2255 Motion Exhibit B (letter from Mr. Piers to the Court). |

9

| Magistrate Finding | Correct Finding |
|---|---|
| 28. When Mr. Butler stated in the ex parte hearing on the Motion to Withdraw that the name "Adam" had never surfaced, it was a "misstatement." Rec. 43. | This was not a misstatement. Mr. Butler stated clearly in the ex parte hearing that the name had never come up. Ex Parte 7. He reiterated and confirmed this at the August 2005 evidentiary hearing: "I know I had no information about Adam [during the ex parte hearing]." Evid. Hrg. 33. |
| 29. Mr. Butler testified that he went to an apartment complex and tried to find Adam there. Rec. 44. | Butler testified that he didn't remember Mr. Piers giving him a map to an apartment complex, and doesn't recall hiring an investigator or doing any investigation. Evid. Hrg. 46. Butler never testified that he went to an apartment complex to look for Adam. |
| 30. On the videotape, Mr. Piers indicated that he had some things to say "before the officer could proceed" with advising him of his *Miranda* rights. Rec. 46. | There is no reason the officer could not have proceeded with the reading of the rights before Mr. Piers spoke. |
| 31. Butler concluded that Mr. Piers's statements on the videotape were volunteered and not the product of interrogation. Rec. 47. | There is no evidence of this conclusion. Butler testified that he could not recall why he did not move to suppress the videotaped statements: "I don't remember what my thinking pattern was . . . I'm just thinking through things as I'm sitting up here and I'm sharing that with you. I don't recall at this point." Evid. Hrg. 88. Butler admitted that Mr. Piers's statement was extremely damaging. *Id.* at 67. |
| 32. There was no assurance made to the jury that Mr. Butler would provide an opening statement at a later time. Rec. 52. | Butler told the court outside the presence of the jury that he was reserving his opening until a "later time," and the court informed the jury that Mr. Butler was reserving his opening until a "later time." Trial 1-151 to 152. |
| 33. There is no support for the claim that Mr. Piers repeatedly asked Mr. Butler to call character witnesses at trial. Rec. 61–62. | This is supported by several pieces of evidence, including the testimony of Mary Hutchison (Evid. Hrg. 239–40), the letter Mr. Piers wrote to the Court (2255 Motion Exhibit B), Mr. Piers's declaration in support of his pleadings (Docket No. 219), and the several character reference letters recovered from Mr. Butler's file (Reply Exhibit H). |

| Magistrate Finding | Correct Finding |
| --- | --- |
| 34. Mr. Piers acknowledges that Butler attempted to refute or explain the circumstantial evidence against Mr. Piers. Rec. 66. | This misconstrues Mr. Piers's pleadings. The actual statement referred to by the Court, taken entirely out of context, is, "Mr. Butler made, at best, a token attempt to refute or explain the circumstantial physical evidence against Mr. Piers." 2255 Motion at 17. |
| 35. The rifle used in the getaway was found in Mr. Piers's bedroom. Rec. 67. | The rifle used in the getaway was recovered from the Bronco driven by the robbers. Trial 2-131. No rifle was ever found in Mr. Piers's bedroom, nor was there any evidence or testimony suggesting so. |

### III. Objections To Legal Findings

| Magistrate Findings | Correct Findings |
| --- | --- |
| 1. The Recommendation is based upon consideration of the evidence adduced at the evidentiary hearing "and the arguments of counsel." Rec. 2. | The Recommendation does not address several arguments made in Mr. Piers's various pleadings, nor does it address Mr. Piers's claim of ineffective assistance of counsel based on cumulative error (Claim 1.23). Reply 41–45; Post Hrg. Arg. 56–64. The unaddressed arguments are too numerous to list in the limited space available. Mr. Piers respectfully requests that the District Court review all of Mr. Piers's prior pleadings: 2255 Motion, Reply (Docket No. 216), Post Hrg. Arg. (Docket No. 247), and Post Hrg. Reply (Docket No. 252), as well as the government's responses to each. |
| 2. If Mr. Butler had called character witnesses, it may have opened the door to other evidence seized from Mr. Piers's computer. Rec. 10. A reasonably competent attorney would weigh the risk that character evidence could open the door to prejudicial evidence. Rec. 62. | Butler could have filed a motion in limine to keep the other evidence out, which may have been granted. A reasonable attorney would have filed a motion in limine to determine this before deciding not to call any character witnesses, or to even contact them. |

11

| **Magistrate Findings** | **Correct Findings** |
|---|---|
| 3. The questions at the evidentiary hearing examined what "could have been done," not "what was done, and why." Rec. 14. | The questions and answers at the evidentiary hearing necessarily related to what should have been done, as this is the basis for any Ineffective Assistance of Counsel claim. *Strickland v. Washington*, 466 U.S. 668 (1984). Because Butler did very little, and remembered even less at the evidentiary hearing, there was necessarily a limited much discussion on "what was done, and why." |
| 4. Sentencing counsel Donald Marks could not have raised an *Apprendi* claim at Mr. Piers's sentencing because *Blakely* had not yet been decided. Rec. 19. | *Apprendi* had been decided at the time of the sentencing, and Mr. Marks should have raised the issue with respect to the upward departures. Reply 45–46. |
| 5. The argument that Marks should have sought a downward departure based on the compassion shown by removing the tape from the teller's nose is "clearly meritless" because Piers did not point to any particular guideline that would be applicable. Rec. 22. | Under the then-mandatory sentencing guidelines, any factor not expressly forbidden by the guidelines—such as a showing of compassion for the victim—could constitute a basis for a downward departure. *Koon v. United States*, 518 U.S. 81, 95–96 (1996). |
| 6. The court was justified in denying Mr. Piers's motion to substitute counsel in part because Mr. Piers did not have substitute counsel readily available for the trial date. Rec. 24. | "Not only is a defendant not required to establish the availability of alternative counsel, imposing such a requirement would conflict with the presumption of prejudice that is required by Ninth Circuit and Supreme Court precedent." *Daniels v. Woodford*, 428 F.3d 1181, 1200 n. 25 (9th Cir. 2005). Post Hrg. Arg. 6 n.4. |
| 7. Mr. Butler did not concede guilt on both conspiracy counts. Rec. 25, 67. | By not differentiating between conspiracy counts, Mr. Butler conceded guilt on both. *See* Reply 32–33; Post Hrg. Arg. 53. |
| 8. Mr. Piers argues that appellate counsels were ineffective for raising ineffective assistance claims on direct appeal. Rec. 26. | Mr. Piers withdrew this claim in his Reply Brief, well before the August 2005 evidentiary hearing, and has made no arguments regarding it in any of his subsequent pleadings. Reply 5 n.8, 49. |

12

| Magistrate Findings | Correct Findings |
|---|---|
| 9. The District Court's failure to sua sponte appoint new counsel to represent Mr. Piers at the hearing on the Motion to Substitute Counsel was not a due process violation, because it was not clear that the conflict was irreconcilable. Rec. 26–27. | The Recommendation does not address *United States v. Wadsworth*, 830 F.2d 1500, 1510–11 (9th Cir. 1987) (defendant's due process rights violated where defendant should have had new counsel to argue the motion to substitute counsel, when it was clear that current counsel had taken an "adversary" position on the matter). The record is rife with evidence of an irreconcilable conflict. 2255 Motion 4–8; Reply 6–9; Post Hrg. Arg. 4–9; Post Hrg. Reply 6–9. *See also* transcript of the Ex Parte hearing on the Motion to Withdraw; 2255 Motion Exhibit B (letter from Mr. Piers to the Court). The Recommendation itself makes reference to "the breakdown of attorney-client relationship" that existed even after Butler had purportedly tried to "work with Piers in preparation for trial." Rec. at 34. |
| 10. Mr. Piers had a fair opportunity to present evidence to the jury that Adam was involved in the conspiracy. Rec. 29. | Mr. Piers did not have this opportunity. He was in custody before trial, and his attorney did no independent investigation regarding Adam or anything else. Post Hrg. Arg. 9–16. Without investigation, there could be no evidence to present. |
| 11. Mr. Piers claims that prejudice must be presumed, and he points to no specific prejudice caused by Butler's late filing of the motion to withdraw. Rec. 34. *Daniels v. Woodford* is inapplicable. Rec. 35. | 1) Prejudice must be presumed where a client goes to trial represented by an attorney with whom he is not communicating. *Daniels v. Woodford*, 428 F.3d 1181, 1199–1200 (9th Cir. 2005) (holding that cases where there is a "breakdown in communication" prior to trial represent the "paradigm" for situations where "prejudice must be presumed"). Piers was not speaking with Butler, let alone communicating with him. Post. Hrg. Arg. 4–6. 2) Where prejudice is presumed, there is no need to demonstrate specific prejudice. 3) There is specific prejudice here—a client is prejudiced when forced to trial with an attorney with whom the client is not communicating. |
| 12. It was reasonable for Mr. Butler to assume that the government was investigating Adam, and in turn for Mr. Butler to rely on the government to do so. Rec. 42. | As caselaw and the ABA Standards for Criminal Justice state, it is entirely unreasonable to rely on the investigation of an adverse party in lieu of independent investigation in a criminal case. Post. Hrg. Arg. 14–15. |

13

| Magistrate Findings | Correct Findings |
|---|---|
| 13. The facts of this case do not merit a finding of ineffective assistance based on the argument that even if the investigation had led to a blind alley, it would have been helpful in assisting Piers to confront the difficulties of the defense. Rec. 43. | This refers to Mr. Piers's argument based on *Johnson v. Baldwin*, 114 F.3d 835, 839–40 (9th Cir. 1997), which found ineffective assistance for failure to investigate, though investigation would have led "only to blind alleys or outright contradiction," because armed with that information, counsel could have confronted defendant with the difficulties of the defense, and chosen alternatives. Post Hrg. Arg. 15. The Recommendation does not distinguish *Johnson* or any of the several other cases finding ineffective assistance for failure to investigate. *See id.* at 13–16; Post Hrg. Reply 10–13. |
| 14. Mr. Piers's statements to Officer Bloodgood were "not responsive" to the questions asked by Officer Bloodgood. Rec. 45. | Bloodgood asked Mr. Piers about another "suspect" involved. Trial 4-22. Piers's alleged statement was a direct response to the questions about the involvement of another. The Recommendation, while characterizing the statement as "not responsive," refers to the statement as an "incriminating response" in the same sentence. Rec. 45. Butler agreed, stating that his failure to move to suppress the statement was a mistake. Evid. Hrg. 63–64. |
| 15. There was no prejudice by failing to move to suppress Mr. Piers's post-arrest statement to Officer Bloodgood because of the "other voluntary admissions by Piers and the overwhelming evidence against him at trial." Rec. 45-46. | There was only one other "admission" introduced at trial, the videotaped statement, and it was not "voluntary." 2255 Motion 10–11; Reply 15–17; Post Hrg. Arg. 19–26. Butler should have moved to suppress that statement as well. *See id.* Also, the evidence against Mr. Piers, at least with respect to the 30-year mandatory minimum machine gun count, was far from "overwhelming." Post Hrg. Arg. 42–52; Post Hrg. Reply 17. |
| 16. When Detective Vanderveur told Mr. Piers on the videotape that Vanderveur had already interviewed Piers's "friend" and that it was Pier's only opportunity to present his side of things, this was not interrogation. Rec. 46 (where the Court states that this exchange occurred "before the interrogation began"). | This was an often-used and classic police interrogation technique, and constitutes interrogation under *Rhode Island v. Innis*, 446 U.S. 291 (1980), because it was specifically designed to elicit incriminating information from Mr. Piers. Post Hrg. Arg. 19–26; Post Hrg. Reply 14–18. |

14

| Magistrate Findings | Correct Findings |
|---|---|
| 17. A reasonably prudent attorney may have concluded that Mr. Piers's videotaped statements were volunteered and not the product of interrogation. Rec. 47. | A reasonably prudent defense attorney understands the doctrine of *Rhode Island v. Innis*, 446 U.S. 291 (1980), and under that standard, the statements were a product of interrogation. Butler testified that he thought *Innis* only applied if there was actual questioning, which is clearly wrong. Evid. Hrg. 85–26. The statements were in direct response to a classic interrogation technique. Post Hrg. Arg. 19–26. |
| 18. Statements that are not in response to any question but are spontaneous are not excluded under *Miranda*. Rec. 47. | Under *Rhode Island v. Innis*, interrogation includes not only direct questioning, but any acts or statements by law enforcement officers that are "reasonably likely to elicit an incriminating response." 446 U.S. 291 (1980). Mr. Piers's statements were not spontaneous, but a response to the officer's classic interrogation technique. Post Hrg. Arg. 19–26. |
| 19. Counsel is not ineffective by failing to file a motion that he reasonably believes to be meritless. Rec. 47. | Counsel is not ineffective by failing to file a motion that he "*knows*" is without merit, after conducting necessary research. *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (cited by the Court in support of its finding). *See also* Reply 13–14. If Butler had researched the issue, he would have understood that under *Innis*, interrogation includes more than direct questioning. Counsel can be ineffective for failing to file a meritorious suppression motion, and the motion in this case would have had great merit based on *Innis*. Post Hrg. Arg. 19–26. |
| 20. Mr. Piers has not established how the admission of his statements were prejudicial, because he did not admit that he committed the robbery or conspired to commit robbery. Rec. 47. | A full unambiguous confession to all charges is not the only statement that can cause prejudice. The admission of Piers's statements were extremely damaging, as shown by the government's reliance on them during trial, particularly in closing arguments. Reply 16–17; Post Hrg. Arg. 16–26. |
| 21. Mr. Piers has not suggested what would have been a plausible theory to present in the opening statement. Rec. 51. | Mr. Piers suggested several plausible arguments to make during an opening statement. Post Hrg. Arg. 28. |

15

| **Magistrate Findings** | **Correct Findings** |
|---|---|
| 22. Mr. Piers has provided no case authority holding that an attorney renders ineffective assistance by choosing not to make an opening statement. Rec. 52. | Mr. Piers cited *Stouffer v. Reynolds*, 214 F.3d 1231, 1233–35 (10th Cir. 2000), in several of his pleadings. *Stouffer* found ineffective assistance for, among other things, failing to give an opening statement. *E.g.* Reply 19, 29; Post Hrg. Arg. 29. Mr. Piers also distinguished the two cases cited on page 51 of the Recommendation regarding this issue, *U.S. v. Rodriguez-Ramirez* and *LaGrand*. Reply 18–19. |
| 23. The court order regarding the evidence seized from Mr. Piers's computer addressed the content on the CDs, not the number of CDs. Rec. 54. | The Court specifically limited what information was admissible. Trial 4-3–8. The amount of data seized was by nature an element of that limitation. |
| 24. It is reasonable to conclude that the jury would have thought that only one of 28 CDs had any bearing on the case. Rec. 54. | Mr. Payne referred to all 28 CDs as "evidence." Trial 4-32. This implies to a reasonable juror that all 28 were relevant, and incriminating. 2255 Motion 12–13; Post Hrg. Arg. 30–31. |
| 25. Regarding Mr. Butler's cross-examination of Officer Reeder, the *Villalpando* case relied upon by Mr. Piers is "readily distinguishable." Rec. 56. | After making this statement, the Recommendation simply recites the facts from *Villalpando*, and does not explain in any way how it is distinguishable from Mr. Piers's case. In fact, it is not materially distinguishable. Post Hrg. Arg. 32–37. |
| 26. It was reasonable for Mr. Butler to question Officer Reeder on whether he got a good look at the person he was describing as the shooter, and doing so did not fall below a reasonable standard of care. Rec. 56, 57. | In light of Reeder's earlier testimony that the individual who shot the machine gun was wearing the clothing and fake moustache that Raymond Hubbard—and only Raymond Hubbard—wore during the robbery, this question was absolutely unreasonable. By negating Officer Reeder's clear identification of Mr. Hubbard—not Mr. Piers—as the shooter, Mr. Butler's cross-examination fell far short of a reasonable standard of care. 2255 Motion 14–15; Reply 22–24; Post Hrg. Arg. 32–37. |
| 27. A forensic expert's uncertainty as to whether a gun was fired as an automatic or a semi-automatic is not relevant as to whether the shooter would have known this. Rec. 57. | If a forensics expert is not certain as to whether the gun was fired as an automatic, it at the very least raises a question as to whether the shooter knew this with certainty. Reply 24; Post Hrg. Arg. 37–38. |

16

| Magistrate Findings | Correct Findings |
|---|---|
| 28. Whether the person firing the weapon knew it was capable of being fired as an automatic has "little bearing" on the shooter's guilt or innocence. Rec. 56–57, 58. | The shooter's knowledge of whether the weapon was capable of being fired as an automatic has great bearing on the issue of guilt. If a person does not know that a gun is capable of being used as an automatic, he cannot be convicted of "knowingly" using an automatic weapon—a requirement for conviction under the machine gun statute. Reply 30–31; Post Hrg. Arg. 37–38, 52. |
| 29. Knowledge that a firearm can function as an automatic for purposes of sentencing may be proved by circumstantial evidence, and the sentencing judge heard the trial testimony. Rec. 59. | Mr. Piers's claim in this regard focuses on a *jury instruction* at trial, and on whether Mr. Piers should have been *convicted* of the machine-gun charge. 2255 Motion 18; Reply 30–31; Post Hrg. Arg. 52. What the sentencing judge heard is irrelevant to the claim. |
| 30. The jury instructions did not violate *United States v. Staples*, 511 U.S. 600 (1994). Rec. 60. | The Recommendation offers no analysis in support of this statement, nor does it address any of Mr. Piers's arguments to the contrary. Reply 30–31; Post Hrg. Arg. 52. |
| 31. Butler was not deficient for failing in closing to call the jury's attention to the fact that co-defendant Franklin used Piers's address on Nelchina Street as a forwarding address to show that Franklin had access to Piers's bedroom and computer, because the "address was Piers' family's address and would have implicated Mr. Piers as well. Rec. 66 | Mr. Piers was already implicated. Evidence was found in the home on Nelchina Street. Establishing that Franklin had access to the Nelchina Street home would not have harmed Mr. Piers in any way, as the jury already knew that Mr. Piers had access to that residence. |
| 32. Mr. Butler's closing argument adequately assisted the jury in analyzing the evidence "although he could have developed his theory of defense better." Rec. 67. | Butler failed to develop his purported theory of defense in any way. During closing, he omitted a myriad of evidence that supported it, due to his own exhaustion and his belief, according to his testimony, that if jurors had already heard the evidence, there was no need to present it to them in closing. 2255 Motion 17–18; Reply 28–30; Post Hrg. Arg. 42–52. |
| 33. *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991) is inapplicable because there is more than one count here. Rec. 68 | Nothing in *Swanson* limits its holding to cases where there is only one count charged. The key is whether Mr. Butler "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991). Reply 31–39; Post Hrg. Arg. 53–55. |

17

| Magistrate Findings | Correct Findings |
|---|---|
| 33. *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991) is inapplicable because there is more than one count here. Rec. 68 | Nothing in *Swanson* limits its holding to cases where there is only one count charged. The key is whether Mr. Butler "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991). Reply 31–39; Post Hrg. Arg. 53–55. |

## Conclusion

In light of the above objections, which apply to virtually every relevant factual and legal finding made by Judge Roberts, Mr. Piers moves the District Court to determine *de novo* such findings and conclusions. Rules Governing § 2255 Proceedings, Rule 8(b); 28 U.S.C. § 636(b)(1); *Orand v. United States*, 602 F.2d 207, 208–09 (9th Cir. 1979). In making the *do novo* determination, the Court should consider the transcripts of the various hearings and the trial, and also the arguments made in Mr. Piers's various pleadings: 2255 Motion, Reply (Docket No. 216), Post Hrg. Arg. (Docket No. 247), and Post Hrg. Reply (Docket No. 252). *E.g. United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988) (under *de novo* review, the reviewing court must "freely consider the matter anew," as if no decision had previously been rendered); *United States v. Lang*, 149 F.3d 1044, 1046 (9th Cir. 1998) (*de novo* review is exercised "without deference").

Respectfully Submitted this 15th day of May, 2006.

_____
Michael R. Levine
Attorney for William Piers

_____
Matthew G. McHenry
Attorney for William Piers

18

*United States v. William Piers*, Case No. A00-0104 CR (HRH)

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I served the foregoing DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE ROBERT'S RECOMMENDATION REGARDING MOTION TO VACATE by depositing a true copy of same in the United States Mail addressed as follows:

Stephan A. Collins
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567

Dated 5/15/06

Matthew G. McHenry