MICHAEL R. LEVINE, Oregon State Bar No. 93142
Pro Hoc Vice
400 SW Sixth Avenue, Suite 600
Portland, Oregon 97204
Phone:   (503) 546-3927
Fax:      (503) 224-3203
Email:    MichaelLevineESQ@aol.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>             Plaintiff,<br><br>vs.<br><br><br>WILLIAM PIERS ,<br>             Defendant. | CASE A00-0104-01-CR (HRH)<br><br>RULE 59(E)  MOTION TO ALTER OR<br>AMEND THE JUDGMENT<br>(Previously filed On November 26,2006  as<br>Motion To Reconsider, Alter, or Amend<br>Judment) |

_____

Pursuant to Rule 59 (e) of the Federal Rules of Civil Procedure, the defendant,

William Piers, through his attorney, Michael R. Levine, moves the Court to reconsider,

alter, and amend its previous order and opinion, filed on November 16, 2006, denying the

motion to vacate his convictions and sentence.  This motion is made because the Court

did not address and overlooked the following points:

**1.  The Court overlooked the fact that Mr. Piers's expert witness, attorney Robert
Ney,  was prepared to testify that Mr. Butler provided ineffective assistance in a
multitude of ways, was eminently qualified, and that his testimony would have
provided strong evidence of Mr. Butler's ineffectiveness.**

The Court held that Magistrate Roberts did not err in precluding Mr. Pier's expert,

Robert Ney, from testifying because such expert testimony was not needed and would not

have "particularly useful." Opinion (Op.) at 6.  The Court should reconsider its ruling for

three reasons.

1

*First*, the Court overlooked the breadth of Mr. Ney's proposed testimony. In its opinion at page 5, the Court states that Mr. Ney was prepared "to offer testimony with respect to applicable, objective standards of reasonableness with respect to an attorney's performance at trial and to evaluate trial counsel's conduct." This is true. However, the Court overlooked the fact that Mr. Ney was also prepared to testify more specifically that in this case Mr. Butler performed ineffectively, incompetently, and below professional norms in each of the following respects, among others:

a. By waiting "until six days before trial to fie a motion to be relieved when his client and client's mother had been insisting that he withdraw from the case at a much earlier time." Ev. Hrg. at 245-246;

b. By "denigrat[ing] his client before the district court, call[ing] him, in essence a liar, and yet proceed [ing] to go to trial....[even though] at that time...the attorney [was] in an adversarial position with his client." Ev. Hrg. at 247;

c. By "not forcefully arguing the motion to be relieved, and failing to sufficiently alert Judge Holland to the ...the true conflict that exited between him and Piers." Ev. Hrg. at 247;

d. By "not filing a motion to suppress Mr. Piers' statements to Officer Bloodgood," because *Miranda* warnings were not given and "the motion would have been granted" and the statement was "highly damaging";

e. That in each of the foregoing actions, and in those that follow, Mr. Butler acted ineffectively and in violation of the ABA and Alaska canons of ethics and in violation of the duty of loyalty and vigorous advocacy. Ev. Hrg. at 248;

f. By "failing to move to suppress the videotape confession of the crime" under *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Ev. Hrg. at 248; and

2

*g*.  By "undercutting his own ...theory of the defense when he had elicited from Officer Reeder that as far as he could tell the person who shot at him [fit the description of Mr. Ray Hubbard]"  but then putting the leading question to Reeder that "you really can't be certain who shot you."?  Ev. Hrg. 249-250.

*Second*, the Court overlooked the fact that Mr. Ney was an eminently qualified expert.  Ev. Hrg. at 275-276.  Mr. Ney was the former Federal Public Defender for the District of Hawaii and was the current chief state public defender for the state of Kansas. He was the former chief public defender for the state of Illinois.  He had consulted in federal death penalty cases in Wisconsin, Minnesota, North Dakota, Iowa and Hawaii. *Id*.  Mr. Ney had been practicing criminal defense for more than 25 years and has conducted over 250 felony jury trial in state and federal court including many homicide and bank robbery cases. Ev. Hrg. 276.  He has lectured widely at CLE courses on all aspects of criminal defense including trial preparation, trial advocacy, opening statements, criminal defense ethics. *Id*.  Mr. Ney  has testified as an expert witness on several occasions including three  post-conviction cases in Kansas and one in Illinois; and was retained as an expert in a federal case in which he submitted an affidavit.  He has also handled many federal and state post-conviction cases himself.  *Id*.

*Third*, and most importantly, in its opinion at page 6, the Court states that in reviewing the case, the Court had "in substance only trial counsel's own view of his performance and argument from the other side." The Court went on to say that "under these circumstances" it was within the Magistrate's discretion to refuse the proffered expert testimony.  *Id*.   Later in its opinion the Court reiterated that because Mr. Piers did not testify at the evidentiary hearing, the Court was "left with precious little more than

3

trial counsel's testimony as regards his own performance as the basis for fact-finding about that performance." Op. at 10-11.

The defense respectfully suggests that the Court violates due process of law to hold, on the one hand, that it was proper for Judge Roberts to forbid Mr. Ney from testifying as to Mr. Butler's many acts of incompetence and ineffectiveness, and yet fault Mr. Piers, on the other hand, for failing to provide evidence of Mr. Butler's ineffectiveness apart from Butler's own testimony.

In light of the foregoing, the Court should reconsider its decision and grant the motion to vacate; or, at the very least, hold a new hearing at which Mr. Ney may testify.

**2.  In holding that the Court was not required,  *sua sponte*,  to substitute new counsel for Piers to argue the motion to withdraw,  the Court overlooked the fact that new evidence was indeed developed at the evidentiary hearing: the conflict between Piers and Butler was so extreme that Piers and his mother had demanded that Mr. Butler get off the case months before the trial began, but Butler refused too act.**

In his Fifth Claim for relief in his 2255 Motion,  Mr. Piers asserted that the district court violated due process of law by not *sua sponte* appointing a different lawyer to argue Butler's motion to be relieved.  The Court rejected this claim, pointing to the Ninth Circuit's opinion in *United States  v. Franklin*, 321 F.3d 1231 (9th Cir. 2003).  Op. at 8.  The court in *Franklin*, however, was merely restating the district court's finding that the dispute between Piers and Butler was merely one of strategy and did not amount to an irreconcilable conflict.  Furthermore, the Ninth Circuit did not have the benefit of the record developed at the evidentiary hearing before Judge Roberts.

In its opinion here, the district court repeats its conclusion that, at the time of the motion to withdraw was heard before trial, the Court "did not perceive that there were any significant conflicts of interest between trial counsel and Piers [and that] had the

4

court believed there was a serious conflict it would certainly have considered the appointment of separate counsel...which surely would have disrupted the trial calendar for the case...." Op. at 8. The Court goes on to state that "the evidentiary hearing [before Judge Roberts] did not develop any new evidence that would case doubt upon the court's decision to deny trial counsel' motion to withdraw." Op. at 11. The Court is mistaken because relevant new evidence was indeed developed at the hearing.

At the hearing, evidence established that because the antagonism and lack of trust between Butler and Piers was so great, Piers and his mother repeatedly demanded that Butler get off the case well before the trial began. Mr. Butler himself conceded this. Ev. Hrg. at 18 lines: 8-11; Ev. Hrg. at 19: lines 19-22. Mr. Piers's mother, Mary Hutchison, testified that she fired Butler and demanded he get off the case at least as early as "November, 2000," some two months before the trial began. Ev. Hrg. at 238, lines 2-5.[1] Mr. Butler also testified that it may well have been he and Piers were not even speaking with each other. Ev. Hrg. 24: lines 17-24. Indeed, at the motion to withdraw, Mr. Butler told the Court that Mr. Piers refused to see and speak with Mr. Butler Mr. Butler went to visit Mr. Piers at the jail. Ex Parte Transcript 3, 5.

Notwithstanding the breakdown in communications, and notwithstanding Piers's earlier, repeated demands made well before trial that Butler withdraw from the case, Mr. Butler waited until 6 days before trial to act because, as he testified, it was his practice not to accede such demands. Ev. Hrg. at 19: line 23 ("I would not have filed [a motion to withdraw] on just the first or second [demand])"; Ev. Hrg. 23: lines 5-9.

---

[1] ██ ███ ██████████████ ██ ████ 9, ██████████ ███████ █████████ ████ ████████ ███ █████████ █████ ████ ██. ████████'█ █████████ ███ ███ ████████ ████ ███ █████ ██████.

At the motion to withdraw the Court was aware to some extent of the antagonism between Piers and Butler.[2]  But the full extent of that antagonism was not apparent because the Court did not know that Mr. Butler had been refusing Piers's and his mother's repeated demands to withdraw from the case, demands that had been made at least two months earlier.  Surely, had this Court been aware, notwithstanding repeated demands,  that Butler was refusing to file a motion to withdraw until a mere 6 days before trial,  the Court would have castigated Mr. Butler's unethical, unprofessional, and illegal  conduct  and would have granted the motion.[3]

---

[2] In his response to the motion to withdraw, Mr. Butler stated, "...the [Piers] represents [Mr. Butler] does not have confidence in counsel" (id. at 3); "[t]here is Mr. Butler's filing points to . . . [t]he expert witnesses he is considering.  The Piers's preference is for other expert witnesses" (id. at 4); "[t]here is a conflict with Piers family" (apparently as to Mr. Butler's representation) (id. at 6); "Piers's [] right" (apparently as to Mr. Butler's representation) (id. at 7); Mr. Butler believes it is only the interest which Mr. Butler and Piers have as to whether Mr. Butler has been named.  In summary memorandum 3, 5, Mr. Butler simply does nothing to make an "undo representation [from] elsewhere [complaint]."  2255 motion attached .

But one more thing, Mr. Butler candidly and Piers's response for other client asserts his views,  indicating that without asking Piers about the "family client choice." (id. at 6); asking to "discharge[] . . . regards counsel, exercising [Piers's affirmative say] a directive of Mr. Piers's representation as as only counsel is not named" (id. at 7); and again as the "family made counsel to achieve based on which by representation" regarding as only by Mr. Butler (id. at 8).

[3] Under a general provision as professional any representative where his professional,  also government or client a professional order to honor that representation by granted based that agreed.  Model Code of Prof'x Responsibility DR 2-110(B)(4) (1983)

The Court has written that it in its view the evidence established the guilt of Mr. Piers beyond doubt. Op. at 3, 12. Even assuming, *arguendo*, that this true of the charge of conspiracy to rob the credit union, it is certainly not the case with respect to the more significant charge of shooting of the machine gun (and for which Mr. Piers received a mandatory, consecutive 30 years of imprisonment by statute).[4] In any event, regardless

---

(_____ _____ the "_____ _____" _____ both "a _____ _____ a _____ . . . _____ _____ _____ _____ . . . as . . . [_]_ of _____ of the _____") (_____ _____); CODEX RULES OF PROF'L CONDUCT R. 1.16(_)(3) (2002) ("[_] _____ . . . _____ _____ _____ his _____ of a _____ if . . . the _____ by _____.") (_____ _____); ALASKA RULES OF PROF'L CONDUCT R. 1.16(_)(3) (2005) (_____). See CODEX CODEX RULES OF PROF'L CONDUCT R. 1.16 cmt. (2002) ("A _____ may a _____ of _____ a _____ of the _____, _____ if _____ _____ . . . ."); ALASKA RULES OF PROF'L CONDUCT R. 1.16 cmt. (2005) (_____).

[4] _____ _____ _____ _____ the _____ the _____ the _____ _____ of the man a _____ the the _____ a _____ _____ _____. See 3-58, 60. _____ of _____ _____ _____ _____ the the _____ of Mr. _____' _____ _____, the _____, the _____. See 2-31, 2-68 (_____ of the _____); See 2-202 (_____ of _____ _____ _____ _____ _____); See 3-13, 3-44 (_____ of _____ _____ _____ _____ _____); See 3-33 (_____ of _____ _____ _____ the _____); See 4-70 (_____ of _____ _____). The _____ _____ _____, _____ 18, 2000, _____ _____ _____ of _____ _____, at 15–16; _____ _____, _____ 18, 2000, _____ _____ _____ of _____ _____ at 32. As _____ _____, Mr. _____ _____ _____ _____ _____ _____ _____ _____ of _____ _____ the the _____ the _____ _____ of the. See 3-60. the of _____ _____, the Mr. _____ the _____ _____ _____ _____ _____, the _____ _____ _____ _____ _____ _____ _____ _____ _____

of the strength of the evidence, when an attorney-client relationship reaches the point

where the attorney and client are antagonistic and adversarial toward each other, and are

not speaking with one another, and where the lawyer has ignored the client's repeated

demands to withdraw from the case, due process is violated when the attorney continues

to represent the client at a hearing on a motion to withdraw. *United States v. Wadsworth*,

830 F.2d 1500, 1510–11 (9th Cir. 1987); *United States v. Adelzo-Gonzalez*, 268 F.3d 772,

779–80 (9th Cir. 2001). Furthermore, in such circumstances, prejudice is presumed. *See*

*Daniels v. Woodford*, 428 F.3d 1181, 1199–1200 (9th Cir. 2005) ( a "breakdown in

communication" prior to trial represents the "paradigm" for situations where "prejudice

must be presumed").

    The Court should reconsider its decision and grant the motion to vacate.

**3. The Court did not address the claim that Mr. Butler was ineffective because he failed to *timely* file the motion to withdraw even though Piers and his mother had demanded that he do so months before the trial began.**

    In Ground A.1 of Mr. Pier's 2255 motion, he alleged that Mr. Butler, was

ineffective under *Strickland v. Washington* by failing to *timely* file a Motion to

Withdraw and substitute new counsel to represent Mr. Piers at trial. Instead of filing the

motion at at least two month before trial, the time that Mr. Piers and his mother

demanded that he do so, Mr. Butler waited until a mere 6 days before trial to file the

_____

▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮, ▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮, ▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮. ▮▮▮ ▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮ ▮▮ ▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮—▮▮ ▮▮▮▮▮▮▮ ▮▮-▮▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮ ▮▮ ▮▮▮ ▮▮▮, ▮▮▮▮ ▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮ ▮▮▮▮ ▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮ ▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮.

motion, thereby virtually ensuring its denial.  The Court did not address this claim in its opinion.

At the evidentiary hearing before the Magistrate-Judge Roberts, Mr. Butler testified that Mr. Piers told him "several times" "well before trial" that he wanted Mr. Butler off the case.   Evid. Hrg. 18–19.[5]   Furthermore, Mr. Piers' mother, Mary Hutchison's unrebutted testimony at the hearing was that she fired Mr. Butler as early as November of 2000, or *two  months prior to the trial*, both orally and in writing.  *Id.* at 238.

Contrary to the Court's statement at page 11 of its opinion, this evidence was developed for the first time at the evidentiary hearing before Magistrate-Judge Roberts.

Indeed, at the hearing, Mr. Butler testified that he did not move to withdraw at the time Piers and his mother demanded such action because it was his practice apparently to not move to be relieved until a client demands it *at least three times*.  *Id.* at 19 ("I would not have filed [a motion to withdraw] on just the first or second saying 'I don't want to deal with you' . . . .").  Mr. Butler further testified that he would not necessarily move to withdraw even after a client "expresses dissatisfaction *repeatedly* and asks an attorney to get off the case."  *Id.* at 22 (emphasis added).  In Mr. Butler's view, he was entitled to continue representing a client—even a retained client, as Mr. Piers was at the time—in the face of the client's repeated demands to withdraw as long as Mr. Butler personally feels that he "can still get the job done for the client."  *Id.*

---

[5] In responding generally on page 38 of its memorandum the state has claimed "there was nothing unusual about he way the parties described Butler's representation here," presumably referring specifically to Butler's explanation of when counsel is bound by the defendant wish to retain or fire court appointed counsel as Butler did in this instance.

Thus, even though Mr. Butler and Mr. Piers were not speaking at the time of trial, and despite having been fired by both Mr. Piers and Ms. Hutchison several times well before trial, Mr. Butler did not move to withdraw until six days before the trial. This is true even though Mr. Butler well knew, as he testified, that "the closer you get to trial probably the less likely a judge is to grant the motion [to withdraw]." Ev. Hrg. at 24. Mr. Butler's delay in filing his motion to withdraw and his "practice" of not acceding to a client's demands to get off the case, until such a demand is made at least three times, constitute ineffective assistance of counsel. This conduct certainly "fell below an objective standard of reasonableness," and therefore meets the deficient performance prong of *Strickland v. Washington*, 466 U.S. 668, 686–88 (1984).

Further, due to Mr. Butler's failure to withdraw when he was fired the first, second, or subsequent times well before trial, Mr. Piers suffered prejudice, the second prong of the *Strickland* test for ineffective assistance. *Id.* When a defendant is forced to trial with an attorney with whom he is not effectively communicating, prejudice is *presumed*. *Daniels v. Woodford*, 428 F.3d 1181, 1199–1200 (9th Cir. 2005) (holding that cases where there is a "breakdown in communication" prior to trial represent the "paradigm" for situations where "prejudice must be presumed").

Moreover, that Mr. Piers was forced to trial with an attorney with whom he was not communicating and with whom he was in irreconcilable conflict is directly attributable to Mr. Butler's failure to timely withdraw from the case when he was first discharged by his client. Both the district court, in denying the motion to withdraw that was eventually filed, and the Ninth Circuit, in affirming the denial of the motion to withdraw, found the lateness of the motion a critical factor in the analysis. *E.g.*, Ex Parte 10–11 (where the court states, "This matter is going to trial as scheduled. You and your

10

attorneys have had more than ample time to dig into this. . . . The attorneys in this case have had way more than the normal amount of time to work with this case."); *Franklin*, 321 F.3d at 1238–39 (noting that denial of the motion to withdraw was not an abuse of discretion, in part because "Piers's motion was not timely"). Similarly, in its current opinion, the Court again notes that granting the motion at such a late date "surely would have disrupted the trial calendar for the case." Op. at 8.

Had Mr. Butler not waited until a mere six days before trial to move to withdraw—had Mr. Butler moved to withdraw when the Rules of Professional Conduct require, i.e., when he was discharged months earlier—the district court would likely have granted the motion, and Mr. Piers could have proceeded to trial with an attorney with whom he was communicating and with whom there was not a conflict *See Harders v. California*, 373 F.2d 839, 842 (9th Cir. 1967) (noting that an attorney "should be, and usually is, relieved of his assignment if his request for such relief is timely").

In summary, Mr. Butler's refusal to withdraw despite being discharged several times by his client and his client's mother, months prior to the trial, constituted deficient performance under *Strickland*. This deficient performance forced Mr. Piers to trial with an attorney with whom he did not communicate whatsoever, who believed Mr. Piers was a liar, and who had breached his duty of loyalty to Mr. Piers. As such the prejudice to Mr. Piers is presumed because it is "so likely to have occurred." *Daniels* 428 F.3d at 1199–1200. Mr. Butler rendered ineffective assistance of counsel. *Strickland*, 466 U.S. at 686–88. The Court should reconsider its opinion and grant the motion to vacate.

**4. The Court did not address the clam that Mr. Butler was ineffective because he failed to vigorously argue the motion to be relieved and breached his duty of loyalty to Mr. Piers.**

11

In Grounds A.2 and A.3 of the 2255 motion, Mr. Piers asserted that Mr. Butler rendered ineffective assistance under *Strickland v. Washington* by not *effectively* arguing the Motion to Withdraw and by breaching his duty of loyalty to Mr. Piers. The Court (and Magistrate Roberts) did not address this claim.

During the ex parte hearing on the motion, Mr. Butler made no attempt to argue for his withdrawal. Rather, the record shows, at no time did Mr. Butler provide the court with any reason or argument as to why the Court should grant the motion. In fact, Mr. Butler stated the opposite: "[I]f the case is to go forward, we'll be prepared to go forward. That's the bottom line." Ex Parte Hearing at 6.

By filing the motion to withdraw, Mr. Butler assumed a duty to advocate in favor of the motion—a duty he failed to perform by not arguing in any meaningful way that he should be permitted to withdraw. The "duty to advocate the defendant's cause" is one of the "basic duties" of a criminal defense attorney. *Strickland* at 688. *See also* ALASKA RULES OF PROF'L CONDUCT Preamble (2005) ("As an advocate, a lawyer zealously asserts the client's position . . . ."); MODEL RULES OF PROF'L CONDUCT Preamble (2002) (same).

Further, Mr. Butler did not merely fail to advocate on behalf of Mr. Piers—he assumed an *adversarial* position against his client, essentially calling him a liar, and breaching the duty of loyalty. At the evidentiary hearing before Magistrate Roberts, Mr. Butler offered no strategic or other advocacy-related reasons for essentially telling the Court that his client was a liar. Ex parte Hearing at 6–8 (where Mr. Butler tells the court that Mr. Piers had sent him on a "wild goose chase," that Adam was a "figment of Mr. Piers's imagination." Even Mr. Butler conceded at the evidentiary

12

hearing that it was not possible to act as a zealous advocate for a client while assuming an adversarial position against him. Ev. Hrg. at 57: lines 5-14.

The "duty of an advocate is that he honorably uphold the contentions of his client. He should not voluntarily undermine them." *Harders*, 373 F.2d at 842 (finding ineffective assistance of counsel for failing to pursue an appeal as the client desired). By failing to offer a single argument as to why he should be permitted to withdraw—indeed, by arguing the *opposite* of Mr. Piers's position and attacking his own client's credibility, Mr. Butler's performance was deficient under *Strickland*. 466 U.S. at 686–88.

Mr. Butler's failure to advocate for his client also caused prejudice to Mr. Piers. Had Mr. Butler made even a cursory attempt to convince the district court that he should be permitted to withdraw, the Court would likely have granted the motion—particularly in light of the court mandate that a client should not be forced to trial with an attorney with whom he has a conflict. *See, e.g.*, *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970) (defendant is deprived of effective assistance of counsel when client is compelled "to undergo a trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict"). *See also Riggins v. Nevada*, 504 U.S. 127, 144 (1992) ("[A] defendant's right to effective assistance of counsel is impaired when he cannot cooperate . . . with his lawyer.").

Because Mr. Butler did not argue his client's position on the motion, Mr. Piers went to trial with an attorney in whom he had no confidence or trust—an attorney with whom he was not even speaking, an attorney who had breached his duty of loyalty to Mr. Piers by telling the Court he believed his client was a liar, and an attorney who was not an advocate for Mr. Piers's cause. In such situations, prejudice is *presumed*, *Daniels*, 428

13

F.3d at 1199–1200, and thus Mr. Butler's assistance was ineffective.  *Strickland*, 466 U.S. at 686–88.  The Court should reconsider its opinion and grant the motion to vacate.

**5.  The Court mistakenly believed that Judge Roberts found that a motion to suppress Pier's custodial statement to Officer Bloodgood ---"Everything is in my name, it's all mine..."-- would have been futile, which is not the case.  Moreover, the Court overlooked the fact that the motion was meritorious and would have been granted.**

In its opinion, the Court stated that "the court adopts the magistrate judge's discussion of this issue.  The court concludes as did the magistrate judge, that a motion to suppress in this instance would have been futile." Op. at 12.  The Court should reconsider its opinion because Magistrate Roberts made no such finding.  See Findings at 45-46.  On the contrary, Judge Roberts observed that the incriminating response by Piers to Officer Bloodgood was not responsive the Bloodgood's question, but Judge Roberts nevertheless "assum[ed] that the statement was elicited during custodial interrogation in violation of *Miranda*." *Id*. The Magistrate went on to hold, however, that the admission of the statement was not prejudicial "because of the overwhelming evidence against him at trial." Findings at  46.  Piers objected to these findings.  Because the Court misconstrued the findings of the Magistrate and did not address the issue, the Court should  reconsider its decision.

Judge Roberts was incorrect in his assertion that the admission of Piers's damming admission was harmless and not prejudicial.   Mr. Piers's statement that "it's all mine" was tantamount to a confession of guilt of possessing and shooting the machine gun.  Such a confession is "probably the most probative and damaging evidence that can be admitted against" a defendant. A*rizona v. Fulminante*, 499 U.S. 279, 292 (1991).

As explained above at footnote 4, the evidence that Mr. Piers fired the machine gun was far from overwhelming. Aside from the self-serving testimony of admitted co-

14

conspirator Raymond Hubbard who had every incentive to blame Piers for the shooting the gun, lest he himself be charged, there was no evidence that Mr. Piers fired the machine gun. To the contrary—Officer Dan Reeder, at whom the machine gun was fired, testified that a person fitting the description of Mr. Hubbard, not Mr. Piers, fired the machine gun. At the very least, had the jury not heard Mr. Piers's post-arrest statement to Officer Bloodgood, there is a strong likelihood that Mr. Piers would have been acquitted of the machine gun count and its associated 30-year mandatory minimum. This alone creates prejudice. *Daniels*, 428 F.3d at 1206 ("A defendant suffers prejudice when counsel's performance leads to an increased sentence for the defendant.").

Mr. Butler's failure to file a meritorious motion to suppress the damaging confession creates a probability, sufficient to undermine confidence in the outcome of the case, that absent Mr. Butler's errors, the outcome on at least the machine gun charge would have been different. As such, Mr. Butler rendered ineffective assistance of counsel. *See A.M. v. Butler*, 360 F.3d 787, 801 (7th Cir. 2004) (ineffective assistance of counsel for failure to file meritorious suppression motion; "at the very least, the admissibility of his statements . . . should have been vigorously challenged in pretrial motions by his counsel"); *Joshua v. DeWitt*, 341 F.3d 430, 440–42 (6th Cir. 2003) (ineffective assistance of counsel for failing to file a meritorious suppression motion, where there was "nothing in the record to reflect that Petitioner's trial counsel considered and declined to raise [the suppression issue] for strategic reasons"); *Northrop v. Trippett*, 265 F.3d 372, 383 (6th Cir. 2001) (ineffective assistance of counsel for failing to file meritorious suppression motion, where it was "difficult to imagine what tactical advantage, or cost, could justify [counsel's]decision"). The Court should reconsider its opinion and grant the motion to vacate.

**5. The Court failed to address Mr. Piers' claim that Mr. Butler's failure to move to suppress or otherwise object to the use of Mr. Piers's post-arrest videotaped statements at the Anchorage police station.**

In Ground A.6 of his 2255 motion, Mr. Piers claimed that Mr. Butler rendered ineffective assistance under *Strickland* by failing to move to suppress or otherwise object to the use of Mr. Piers's post-arrest videotaped statements which were taken at the Anchorage police station. In its opinion the Court failed to address this claim although Piers appealed from the Magistrate's denial of this claim.

A videotape (Defendant's Exhibit C from the evidentiary hearing), played both for the jury at Mr. Piers's trial and also for the Court and witnesses at the evidentiary hearing clearly shows that after Mr. Piers's arrest, he was held alone, handcuffed, in a small interrogation room at the Anchorage Police Station. Eventually, Anchorage Police Detective Nick Vanderveur entered the room with an unnamed individual who removed Mr. Piers's handcuffs. FBI Agent Louann Henderson also entered the room, and Detective Vanderveur introduced himself and Agent Henderson. Detective Vanderveur turned on an audio tape recorder visible on the table (the video recorder was already running), then told Mr. Piers the following:

> We're here to allow you the opportunity to talk to us, but before that happens, we're going to have to read you *Miranda* warnings. Before I do that, I want to tell you that the reason it's taken us so long to get to you is we've been busy talking to your friend. Now, the problem here is in my experience we don't always get the truth from co-conspirators in cases.
>
> Now I understand that you understand a little about law enforcement. That you were one of our Explorers and even applied to APD. So this is going to be your opportunity to talk to us about what happened today at the bank. Whether you do or not is going to be up to you. Okay?
>
> I'm going to read you each of these warnings, and even though you may know them by heart yourself, I want you to listen to each one. And I'm going to ask you at the end of each one if you understand it or not. Just

16

tell me if you do or don't understand when I read the question to you or the statement to you.  Okay?

Defense Evidentiary Hearing Exhibit C.

At that point, Mr. Piers said, "Before you read them and we get started, would you mind killing the tape for a minute and I'll . . ."  Detective Vanderveur responded, "I can kill the tape," at which point he shut off the audio tape recorder, but left the video recorder running.  Detective Vanderveur did not, however, inform Mr. Piers that the video was still recording.[6]  After Detective Vanderveur shut off the audio tape, and before Mr. Piers was administered his *Miranda* warnings as Detective Vanderveur stated he was "going to have to" do, Mr. Piers stated among other things, "I know I already turned myself into a criminal and pretty much disgraced my family . . . obviously I'm gone for a long time."  *Id.*

After this exchange, Detective Vanderveur finally administered *Miranda* warnings.  After acknowledging that he understood them, Mr. Piers requested to call his grandmother, which Detective Vanderveur allowed.  When Mr. Piers returned from the phone call, he immediately requested an attorney, and the interview was concluded.  *Id.*

This  was a clear example of an impermissible custodial interrogation, and Mr. Piers's statements would have been suppressed had Mr. Butler filed a motion to do so. *Miranda*, 384 U.S. at 444–45 (warnings must precede custodial interrogation); *United States v. Melvin*, 91 F.3d 1218, 1222 (9th Cir. 1996) (person is in custody if "under the circumstances, a reasonable person would believe that he is not free to leave"); *Innis*, 446 U.S. at 300–01 (interrogation includes express questioning as well as "any words or

---

[6] ░░░░ ░░░ ░░░░░░░░ ░░░░░░░░░—░░. ░░░░░ ░░░ ░░░░░░░ ░░░░ ░░ ░░░ ░░░░░ ░░░░░░░░░░ ░░ ░░░ ░░░░.  ░░░░ ░░ ░░░░░; ░░ ░░. ░░░░░ ░░░ ░░░░░ ░░░░░ ░░░ ░░░░░░░░░, ░░ ░░░░░ ░░░░ ░░░░░░░░ ░░░░ ░░░░░░░░ ░░░░░░░░░░ ░░░░ ░░░ ░░░░░ ░░░░░░░ ░░░ ░░ ░░░░.

actions on the part of the police . . . that police should know are reasonably likely to elicit an incriminating response").

Mr. Butler, however, did not move to suppress these statements, nor otherwise object to their admission. His testimony at the evidentiary hearing demonstrated that this omission was a grievous mistake on his part, and constituted deficient performance under *Strickland*. When first questioned about the statement Mr. Piers made on the tape, Mr. Butler agreed that the statement was "extremely damaging." Evid. Hrg. 67. Mr. Butler further agreed that "if there had been any grounds to move to suppress that statement a motion to suppress should've been made." *Id.*

After viewing the tape at the evidentiary hearing, when asked whether it occurred to him to file a suppression motion, Mr. Butler stated that Mr. Piers's statement "wasn't in reference [sic] to questioning by officers." Magistrate Roberts found that "a reasonably prudent attorney might well have concluded, as did Mr. Butler, that Piers's statement to Detective Vanderveur were volunteered not obtained through interrogation." Findings at 47. The Magistrate is flat wrong. A reasonably prudent attorney would know the applicable law and would have filed the motion to suppress.

It is well-established law that custodial interrogation includes not only express questioning by law enforcement, but also "its functional equivalent," i.e., "any words or actions on the part of the police . . . that police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 300–01. When reminded of the *Innis* doctrine, Mr. Butler stated that the doctrine only applies if direct questioning of the subject eventually begins:

> But I mean, the main thing where you're talking about the legal issue here, especially *Rhode Island v. Innis*, is this statement likely to get the defendant to answer questions, yes, *once the questions are put to him.*

18

Evid. Hrg. 85–86 (emphasis added).  Mr. Butler further testified that, even today, he

believes "that that statement is not suppressible . . . .  I don't even think it's a close

question."  *Id.* at 88.

Mr. Butler's position demonstrates a fundamental misunderstanding of this most

basic tenet of criminal law—under *Innis*, direct questioning is simply not required in

order for conduct by law enforcement agents to constitute interrogation.  To the contrary,

in the 35 years since the United States Supreme Court decided *Innis*, there have been

myriad cases finding interrogation under *Innis* where there was no questioning

whatsoever.  *See, e.g.*, *United States v. Orso*, 266 F.3d 1030, 1033–34 (9th Cir. 2001)

(interrogation when agent spoke with defendant about evidence, witnesses against her,

and penalties of crime, though defendant told not to speak); *United States v. Rambo*, 365

F.3d 906, 909–10 (10th Cir. 2004) (interrogation where police officer repeatedly stated,

"If you want to talk to me about this stuff, that's fine"); *United States v. Tyler*, 164 F.3d

150, 155 (3d Cir. 1998) (interrogation because police commanded defendant to "tell the

truth"); *United States v. Montana*, 958 F.2d 516, 518 (2d. Cir. 1992) (interrogation where

officer told suspect that any cooperation would be brought to Assistant U.S. Attorney's

attention).

Detective Vanderveur's pre-*Miranda* statements to Mr. Piers—specifically, stating

that "this is going to be your opportunity to talk to us about what happened today at the

bank," that "the reason it's taken us to long to get to you is we've been busy talking to

your friend," and that "in my experience we don't always get the truth from co-

conspirators"—is a classic interrogation technique, designed to pit one co-conspirator

against another in hopes that a confession will be obtained from one or both.  Indeed, this

tactic is taught as a basic form of interrogation under the "Reid Technique" of criminal interrogations.[7]  The book, <u>Essentials of the Reid Technique: Criminal Interrogations and Confessions</u>, co-authored by John E. Reid himself, titles this as "Tactic 4: When Co-offenders are Being Interrogated . . . Play One Offender Against the Other."  FRED E. INBAU ET AL., ESSENTIALS OF THE REID TECHNIQUE: CRIMINAL INTERROGATION AND CONFESSIONS 161 (4th ed. abridged 2005).

Since Mr. Butler clearly "fundamentally misunderstood" the *Innis* doctrine, he "thus lacked the legal understanding necessary for a competent tactical decision." *Edwards v. Lamarque*, 439 F.3d 504, 512 (9th  2005).  *See also id.* (noting that where trial counsel had "no conception of the most basic premises of the spousal privilege," he could "therefore not make competent tactical decisions regarding it"); *Iaea v. Sunn*, 800 F.2d 861, 865–66 (9th Cir. 1986) (finding counsel's performance deficient and remanding for prejudice determination where counsel gave erroneous advice on effect of guilty plea due to misunderstanding of sentencing law).  Thus, "[e]ven if it was a conscious strategy," and there was no testimony from Mr. Butler that it was, Mr. Butler's decision not to suppress these statements under *Innis* "was so completely uninformed and misguided that a reasonably competent lawyer would not have done the same thing in like circumstances."  *Edwards*,  439 F.3d  at 514.  Again, Mr. Butler himself agreed that

---

[7] The Reid Technique, originally developed in the 1940s and 1950s and first published in 1962, is the seminal textbook on interrogation and confirmatory confessions in the investigative community.  See Missouri v. Seibert, 542 U.S. 600, 611 n.2 (2004) (citing a history of the Reid Technique while addressing police tactics); Miranda v. Arizona, 384 U.S. 436, 449-455 and accompanying discussion (citing to the Reid Technique and similar manuals as indicative of the interrogation process).

"if there had been any grounds to move to suppress that statement a motion to suppress should've been made."  Evid. Hrg. 67.

Mr. Butler's failure to act prejudiced Mr. Piers under *Strickland*.  Mr. Piers's statement was tantamount to a confession of guilt, "probably the most probative and damaging evidence that can be admitted against" a defendant.  *Fulminante*, 499 U.S. at 292.  Indeed, the government focused on this statement as proof of Mr. Piers guilt, reciting it once during its opening statement and twice during its closing argument to the jury at trial.  Trial 1-44, 5-22, 5-53.  Had Mr. Butler filed a motion to suppress, it would have been granted, and the jury would not have heard this "most probative and damaging" of evidence.  *Fulminante*, 499 U.S. at 292.

As stated above, apart from the self-serving testimony of admitted co-conspirator Raymond Hubbard, there was no evidence that Mr. Piers fired the machine gun.  To the contrary—Officer Dan Reeder, at whom the machine gun was fired, testified that the person who fired the gun fit the description of Hubbard.  At the very least, then, had the jury not heard Mr. Piers's videotaped post-arrest statement, there is a likelihood that Mr. Piers would have been acquitted of the machine-gun count and its associated 30-year mandatory minimum.  Indeed, the government mentioned this statement in its opening, and focused on the statement twice in its closing argument.  Trial 1-44, 5-22, 5-53.  This alone creates prejudice.  *Daniels*, 428 F.3d at 1206 ("A defendant suffers prejudice when counsel's performance leads to an increased sentence for the defendant.").

Despite this impermissible custodial interrogation, Mr. Butler made no attempt to move to suppress the statement.  Further, he made no objection when the government introduced the statement at trial as substantive evidence (RT 4-91).  Under the circumstances, this failure to attack the use of the statement constituted ineffective

21

assistance.  *Strickland*, 466 U.S. 668.  The Court should reconsider its opinion and vacate the convictions.

**6.  The Court has misconstrued Pier's claim regarding Butler's the cross-examination of Officer Dan Reeder and should reconsider its opinion.**

Officer Reeder testified that he believed the person who fired the assault weapon at his patrol car had a goatee and was wearing a faded Carhartt jacket.  RT 3-58, 60.  This fit the uncontroverted description of Raymond Hubbard, not Mr. Piers.  Mr. Butler, however, then proceeded to elicit testimony from Reeder that he never actually saw the person who fired at his patrol car.  RT 3-60.  Government witness and co-conspirator Hubbard was the only other witness to offer any testimony regarding the identity of the shooter.  Had Mr. Butler not completely nullified Officer Reeder's testimony regarding the shooter's identity, the jury would have been faced with two conflicting accounts regarding the shooter—one from an admitted co-conspirator with motive to fabricate his testimony, the other from a respected local police officer.  Instead, the jury saw nothing to refute Hubbard's testimony regarding the shooter's identity, and convicted Mr. Piers of using a machine gun—a charge carrying a 30-year mandatory minimum sentence.

In Claim A13 of his 2255 motion, Piers claimed that Mr. Butler rendered ineffective assistance under *Strickland*  by incompetently cross-examining Anchorage Police Officer Dan Reeder, undermining an otherwise strong defense as to the machine gun counts.  In its opinion, the Court misconstrued this claim as a complaint by Piers that Butler did not cross-examine Reeder "beyond obtaining a statement that [Reeder] never actually saw the person who fired at his patrol car." Op. at 18.  The Court then adopts the

magistrate's judge's discussion of the issue.  The Court then reasons that Butler properly stopped his cross-examination because "pressing on with vigorous cross-examination could have been very dangerous, for it might have propelled Reeder into recalling and relating further information that would significantly undercut the potentially helpful statements that he had made." *Id*.

Mr. Piers's claim, however, is not that Butler erred in continuing to cross-examine Reeder, but that he erred in further cross-examining Reeder at all with regard to the identification.  After all, Reeder had testified in essence that shooter was Hubbard, not Piers.  Mr. Butler had won the machine gun count with this testimony as it stood.

Mr. Butler's testimony at the evidentiary hearing confirmed that his negating Officer Reeder's identification of Raymond Hubbard as the shooter was a serious error.  Mr. Butler agreed that Officer Reeder's identification of Raymond Hubbard as the shooter would have been "good for the defense" in light of his purported focus on obtaining an acquittal on the machine gun count.  Evid. Hrg. 102, 104.  When asked why he asked the final question of Officer Reeder on cross-examination, Mr. Butler backpedaled, stating that he could not "remember everything about the case." *Id.* at 106.  Mr. Butler's defensiveness became even more apparent in his response to the next question put to him at the evidentiary hearing:

> Q [by Mr. Levine]: [Y]ou would agree, would you not, that if you established that Reeder at least believed that the person who was shooting was wearing a goatee and a Carhartt jacket and was Mr. Hubbard, if you establish that you would agree, would you not, that it would be then a mistake to cast doubt on Mr. Reeder's own identification of Mr. Hubbard?
>
> A [by Mr. Butler]: *It depends on what other evidence we've got there.*

*Id.* at 106–07 (emphasis added). This statement is untenable. The machine gun count

carried a 30-year mandatory consecutive sentence. Under no circumstances would it be

an appropriate tactical decision to cast doubt on the positive identification of Mr.

Hubbard as the shooter as opposed to Mr. Piers. This is particularly true where, as Mr.

Butler alleges, the entire focus of the defense was to cast doubt on Mr. Piers's identity as

the shooter. *Id.* at 97, 102, 104, 144. Mr. Butler admitted that if he had not negated

Officer Reeder's identification of Mr. Hubbard as the shooter, it would have been "a

powerful piece of evidence" to use in his closing argument. *Id.* at 109. Mr. Butler's

incompetent cross-examination of Officer Reeder fell below an objective standard of

reasonableness.

Mr. Butler stated multiple times in his testimony at the August 2005 evidentiary

hearing that he thought his strategy at trial was to focus on obtaining an acquittal for the

machine gun count. *See Ev. Hearing* at 97, 102, 104, 144. With Officer Reeder's

identification of Mr. Hubbard as the shooter, and with no other evidence of the shooter's

identity aside from testimony of Mr. Hubbard himself, Mr. Butler had the machine gun

count won, for all intents and purposes, needing only to point these facts out in his

closing argument. Mr. Butler made an egregious error in his cross-examination of

Officer Reeder, costing his client an additional 30 years of incarceration. This alone

constitutes prejudice for purposes of *Strickland*'s test for ineffective assistance. *Daniels*,

428 F.3d at 1206 ("A defendant suffers prejudice when counsel's performance leads to an

increased sentence for the defendant.").

Moreover, prejudice occurred here because Mr. Butler's deficient performance—negating the positive identification of Mr. Hubbard by the only eyewitness to the shooting, a trained police officer—raises a probability, sufficient to undermine confidence in the outcome of the trial, that in the absence of Mr. Butler's shortcomings, the outcome of the trial at least on the machine-gun count would have been different.  As a result, Mr. Butler's assistance was ineffective and Mr. Piers's convictions should be vacated.  *See Stouffer v. Reynolds*, 214 F.3d 1231, 1234 (10th Cir. 2000) (ineffective assistance of counsel for, *inter alia*, inept cross examination that "served to bring out even greater detail and emphasize incriminating evidence"): *United States v. Villalpando*, 259 F.3d 934 (8th Cir. 2001) (defense counsel's cross-examination of a government witness that elicited defendant had threatened witness amounted to ineffective assistance of counsel under *Strickland* because " such evidence has absolutely no strategic value for the defendant").

The Court should reconsider its opinion and grant the motion to vacate.

**7. Mr. Butler was ineffective based on cumulative errors. _**

In Ground 1.23 of his 2255 motion, Mr. Piers asserted that Mr. Butler provided ineffective assistance of trial counsel due to cumulative errors.  In its opinion, the Court (and the Magistrate) did not address this claim.  Even assuming, *arguendo*, that Mr. Piers did not suffer prejudice under *Strickland* for any one individual shortcoming of Mr. Butler's representation, "prejudice may result from the cumulative impact of multiple deficiencies" of counsel.  *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995).

The Court should reconsider its opinion and grant the motion to vacate .

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to reconsider and vacate Mr. Piers's convictions and sentences.

Dated: November 26, 2006

<u>/s/ Michael R. Levine</u>
Michael R. Levine
Attorney for William Piers